## The State of Kansas v. Sam. Clark.
### No. 13,928   (77 Pac. 287.)

SYLLABUS BY THE COURT.

1. MURDER—*Instructions Concerning Inferior Offenses.* In a prosecution for murder the defendant is entitled to have submitted to the jury the question whether the homicide was of a lower degree than that charged in the information, unless the testimony shows beyond question that the greater offense only was committed. Slight evidence that the crime may have been of a lower grade than the one charged requires the court to instruct the jury on the law of the inferior offenses included in the charge of murder, and the unsupported testimony of defendant is sufficient for that purpose.

2. —— *Self-defense and Manslaughter Not Inconsistent Defense.* The fact that testimony introduced on behalf of a defendant on trial for murder gave support to the theory that he acted in self-defense is not inconsistent with the claim that, if guilty, his crime was manslaughter and not murder.

3. —— *Failure of Counsel to Formulate Theory Will Not Justify Refusal to Instruct.* The court will not be justified in refusing to instruct the jury, when the testimony requires it, on the lower degrees of crime included in a charge of murder, for the reason that counsel for the accused, upon request from the court, failed or neglected to formulate a theory on which such instructions might be given. Section 5681 of the General Statutes of 1901 requires the court, in a criminal case, to state to the jury all matters of law which are necessary for their information in giving a verdict.

Appeal from Washington district court; Hugh Alexander, judge. Opinion filed June 11, 1904. Reversed.

STATEMENT.

The appellant and his brother, Tom Clark, were jointly charged by information with the crime of murder in the first degree for the killing of one Owen Masten on or about April 17, 1903. Appellant demanded a separate trial, was convicted of murder in

the second degree, and sentenced to imprisonment in the penitentiary for the term of twenty-one years.

The substance of the testimony on behalf of the state, given briefly, was as follows : On the morning of April 17, 1903, James Tunks,. who operated a thrashing-machine, commenced work for Ben Clark, the father of appellant. Clark and Owen Masten, who was afterward killed, each had some Kafir-corn which they wanted thrashed, and it was agreed that their corn should be thrashed first and then some oats in the stack which stood on the land. The thrashing-machine and the engine which propelled it arrived on the ground between seven and eight o'clock in the morning. Masten came soon after with a load of Kafir-corn. The machine stood between stacks of oats, two on the east, and two on the west side. The engine was forty-five feet south of the separator, and connected with it by a belt which conveyed the power. Before the homicide the appellant and Masten were working on the west side of the separator, assisting in pitching grain. Tom Clark was working on the other side. When the thrashing was nearly finished James Tunks, who had the charge and management of the thrashing, saw the two Clarks and Masten south of the machine, about six or eight feet apart, engaged in conversation. There was nothing unusual in their conduct or appearance. The Clarks were leaning on their pitchforks, but he could not tell whether Masten had a fork. The witness then went under the machine (the feeder) to gather up loose grain, his back being turned toward Masten and the Clarks. He heard a dull thud and turning saw Masten on the ground and the two Clarks over him. They were striking him over the head with forks. He thought there were

from four to six strokes. He approached them immediately. Masten was down with blood on his face. He told them not to strike again. Tom Clark replied with an oath : "Stay out of this ; this is our fight." There were no other blows given after the witness came. Sam. Clark said to Barton Tunks, who approached them : "If you want anything out of this, you can damn soon have it." Sam. said to Tom : "You did n't strike hard, but I did." The other witnesses for the state did not hear any quarrel between Masten and the Clarks. They all came forward when Masten was down, but saw no blows struck thereafter.

Mr. Nelson testified for the prosecution that when he went to Masten's assistance Tom Clark said : "Nelson, you have no business to interfere." The witness said : "My God, you aint going to kill the man, are you ?" Tom answered : "He is about done up anyway." Mr. Durham testified that he talked with appellant shortly afterward. The latter said that Masten drew his glove and he thought he was going to strike him, and that he (Clark) struck him with his fist and then with his fork. He said : "It was our intention to fix him on the start, for he could whip the whole of us." Masten was carried home in an unconscious condition and died the day following from concussion of the brain.

On the part of the defendant the testimony tended to show that Masten and appellant had been on friendly terms before the homicide ; that on the morning of the fight Masten worked with Sam. Clark on the east side of the machine. The following is, in substance, appellant's version of the tragedy :

"We were friendly. He said : 'Come over to my place Sunday for dinner' ; and I said : 'I will if I can.'

We got done quicker than those on the other side of the stacks. Masten told me when we were nearly done to go over on the other side. I did, and took a four-tined fork and went to pitching with Tom and Nelson. When Masten got through on the east side he came over on the west side, crawling under the belt. We then all pitched from the same stack. I started to the engine, and when I got back Tom and Masten were talking, with forks in their hands. Tom said: 'Ony, I don't want any trouble with you over six dollars and a stack of oats. You are a bigger man and a better man than Sam. I don't want any trouble.' Masten said: 'You have throwed this up to me about beating you out of a stack of oats a good many times.' He swore and said: 'You will have trouble if you keep on.' They seemed mad and it was a quarrel all right. I stepped a little to the southeast of them and said: 'See here, fellows, settle this without any trouble.' Masten said: 'If you want a hand in this you can have it'; and swore and said he could whip both of us. I said: 'I don't want a hand in it; Tom is my brother and you are a friend of mine, and I would rather pay the six dollars than have any trouble.' Masten turned toward me and said: 'I will settle you both right here.' He said he could whip both of us and do it quick. He was a strong man, over six feet, weight 200 pounds, 30 or 35 years old. When he said 'I will settle you both,' he stepped back and grabbed his pitchfork. He stepped up toward me and said: 'If you want a hand in this you can have it.' He started to pull off his gloves, and was mad. I thought he was going to jump on me. I said: 'Ony, I don't want a hand in this.' He had stuck the pitchfork in the ground right by him before I interfered. I thought he was going to strike me. When he turned round to strike me I throwed up my fork in his face. It struck him. I did it to protect myself. He turned and started to raise his fork, and Tom struck him on the head. He staggered forward, turned round, and Tom hit him again, and knocked him to the ground. I was afraid Tom was going to strike him again. I said: 'Don't hit him! Don't hit

him!' Tom struck him again and I knocked off his blow with my fork, and it knocked his fork back. Tom raised his fork again. I said: 'Are you still going to strike this man when he is down?' I knocked his fork aside. Then Tom backed off and James Tunks came up, and my father, and Nelson.

At the close of the testimony the following appears from the record :

"The court thereupon asks counsel for defendant what instructions they desire given to the jury.

"And Mr. Rector replies, that the defendant wishes the court to give instructions to the jury as to these offenses only : Murder in the first and second degrees ; manslaughter in the second, third, and fourth degrees, and assault and battery. But no written requests for instructions were presented, and the defendant objected to the court's giving any instructions as to manslaughter in the first degree. The court asked defendant's counsel to formulate a theory upon which instructions as to manslaughter in second, third and fourth degrees should be given, but the counsel of defendant wholly failed to formulate any theory and did not attempt to do so."

*C. C. Coleman*, attorney-general, and *A. J. Freeborn*, for The State.

*J. W. Rector*, for appellant.

The opinion of the court was delivered by

SMITH, J.: If the testimony tended to show that the appellant, without justification or excuse, as defined in sections 9 and 10 of the crimes act (Gen. Stat. 1901, §§ 1994, 1995) killed, or assisted, aided, or abetted in killing, Masten, without malice, expressed or implied, then the grade of his offense was reduced from murder to one of the degrees of manslaughter. Manslaughter is distinguished from murder by the absence of malice as a constituent element.

If, under the influence of some violent emotion, a sudden intent was formed which, upon adequate provocation, overwhelmed the reason of the appellant, then the killing was not murder, but manslaughter only. It is important to refer to our statutory provisions respecting manslaughter to determine whether the court was legally justified in refusing to instruct the jury on the different degrees of manslaughter, excepting the first. As to it, counsel for defendant expressly requested the court not to instruct the jury on the elements of that crime. We shall, therefore, give no consideration to the assigned error, founded on a ruling now alleged to be erroneous, which was invited by counsel for appellant.

The killing of a human being under circumstances which do not constitute excusable or justifiable homicide, without a design to effect death, in the heat of passion, but in a cruel or unusual manner, is declared by our statute to be manslaughter in the second degree. (Gen. Stat. 1901, § 2001.) So, also, it is manslaughter in the same degree unnecessarily to kill another either while resisting an attempt by such other person to commit any felony or do any other unlawful act, after such attempt shall have failed. (§ 2002.) It is made manslaughter in the third degree to kill another in the heat of passion, without design to effect death, by a dangerous weapon, in any case except where the homicide is excusable or justifiable. (§ 2003.) Again, "the involuntary killing of another by a weapon, or by means neither cruel nor unusual, in the heat of passion, in any case other than justifiable homicide, shall be deemed manslaughter in the fourth degree." (§ 2011.)

In the present case, the effect of the instructions

given was a ruling by the court that the circumstances
of the homicide confined the offense to a wilful, de-
liberate and premeditated killing, which is murder in
the first degree, or to a murder done purposely and
maliciously, but without deliberation and premedita-
tion, which is murder in the second degree. In this
we are well convinced that the court erred. The cir-
cumstances of the homicide indicate a total absence
of bad feeling or hostility on the part of appellant to-
ward Masten before the fatal blows were struck. The
two worked side by side pitching grain to the thrasher,
and no one testified that they did not sustain friendly
relations up to the very moment that the affray began.
The witnesses for the state testified to the fact and
manner of Masten's death, but respecting the reasons
for it they did not enlighten the jury except to repeat
one or two somewhat damaging admissions of the ac-
cused, which he, however, denied making.

In *The State v. Kornstett*, 62 Kan. 221, 61 Pac. 805,
the accused was charged with murder in the first de-
gree. It was held that a trial court is justified in re-
fusing to instruct the jury on the lower degrees of
such crime only when the testimony shows beyond
question that defendant is guilty of the higher offense.
In *The State v. Buffington*, 66 Kan. 706, 709, 72 Pac.
213, 214, the court said :

"The defendant in a criminal prosecution has a
right to have the court instruct the jury in the law ap-
plicable to his contention, if it be supported by sub-
stantial evidence, however weak, unsatisfactory or
inconclusive it may appear to the court. To refuse so
to instruct the jury would be to invade its province in
the trial of a case. The question is not whether, in
the mind of the court, the evidence as a whole ex-
cludes the idea that the defendant is guilty of an in-
ferior degree of the offense charged, but whether there
is any substantial evidence tending to prove an in-

ferior degree of the offense.  If there is, then the question of such degree should be submitted to the jury.  The unsupported testimony of the defendant alone, if tending to establish such inferior degree, is sufficient to require the court so to instruct.'

In *The State v. Patterson*, 52 Kan. 335, 34 Pac. 784, it was held that where there is even slight evidence that the offense committed may have been of a lower degree than the one charged it is proper to charge the law of such inferior offenses.

Adverting to defendant's testimony, it appears that there was a controversy between Masten and Tom Clark over a small amount of money, which the latter claimed Masten owed him for a stack of oats.  When appellant approached them they were quarreling over this indebtedness.  Sam. Clark said : ''See here, fellows, settle this without any trouble.''  Masten then said to him : ''If you want a hand in this you can have it,'' and swore he could whip both of them. Appellant said : ''I don't want a hand in it.  Tom is my brother, you are a friend of mine, and I would rather pay the six dollars than have any trouble.'' Masten then turned around to defendant and said : ''I will settle you both right here.''  He said he could whip both of them, and do it quickly.  When he said ''I will settle you both,'' he stepped back, grabbed his pitchfork, and started to pull off his glove.  He was angry.  Appellant thought he was going to jump on him.  He turned round to strike, and appellant threw his fork in his face.  It struck him.  He turned and started to raise his fork when Tom Clark struck him on the head.  He turned round the second time, when he gave him another blow which knocked him to the ground.  Appellant, being afraid that his brother would strike him again, said : ''Don't hit him !  Don't hit him !''

The fact that defendant's testimony gave support to the theory that he acted in self-defense was not inconsistent with the claim that, if guilty, his crime was manslaughter and not murder. The accused had the right to present both aspects of the case to the jury, and rely on an act of self-defense and also on one resulting from a sudden passion without malice. The first paragraph of the syllabus of the case of *Stevenson v. United States*, 162 U. S. 313, 16 Sup. Ct. 839, 40 L. Ed. 980, reads :

"On the trial of a person indicted for murder, although the evidence may appear to the court to be simply overwhelming to show that the killing was in fact murder, and not manslaughter or an act performed in self-defense ; yet, so long as there is evidence relevant to the issue of manslaughter, its credibility and force are for the jury, and cannot be matter of law for the decision of the court."

Under section 2001, General Statutes of 1901, referred to above, the jury might have concluded that appellant killed, or assisted in the killing of, Masten without a design to effect death, in the heat of passion, in a cruel or unusual manner, by means of blows inflicted with a pitchfork, through anger aroused by the threats and hostile demonstrations of the deceased. They might have found, also, under section 2002, *supra*, that appellant unnecessarily killed Masten while resisting an attempt of the latter to strike him with a pitchfork, after the attempt to strike had failed. The witness James Tunks testified that he saw the defendant striking Masten over the head after the time when appellant said that Masten attempted to strike him. The jury, also, after considering all the attending circumstances, might have inferred that appellant was guilty of manslaughter in the fourth degree. The trial court took the view that

there was no adequate or reasonable cause for the appellant to be thrown into such passion as to dethrone his reason for the time being, sufficient in law to reduce the crime from murder to manslaughter.

This court has repeatedly held in homicide cases where self-defense was pleaded as a justification for the killing that a reasonable apprehension by the accused of imminent danger to his life or limb was a sufficient excuse, and of the reasonableness of this apprehension the jury were to be the judges. (*The State v. Bohan*, 19 Kan. 28; *The State v. Keefe*, 54 id. 197, 38 Pac. 302.) The same rule is applicable to the case at bar, and whether there was sufficient cause to believe that heated passion and not malice impelled the homicide was for the jury to decide.

The case of *The State v. McCarty*, 54 Kan. 52, 36 Pac. 338, is cited by counsel for the state in support of their contention that where the jury, under proper instructions, have found a defendant guilty of a superior offense, the giving of erroneous instructions, or a total failure to instruct, with reference to an offense of an inferior degree is not error. That case does approve such doctrine by quoting *The State v. Dickson*, 6 Kan. 209, with the observation that the latter case ought not to be extended to unreasonable limits. It will be seen, however, from a reading of the opinion in *The State v. McCarty* that the court held that there was no proof justifying the giving of an instruction under said section 2002, General Statutes of 1901. On the other degrees of manslaughter the court gave directions to the jury satisfactory to the appellant.

Appellant asked the court to give instructions on all the degrees of manslaughter except the first. The court requested counsel to formulate a theory on which instructions respecting manslaughter in the

second, third and fourth degrees should be given, which he failed to do. The court was justified in refusing to instruct on manslaughter in the first degree, but, as to the other degrees, the failure of counsel to formulate a theory on which the court might instruct was not a sufficient reason for such refusal. The testimony itself, without the aid of counsel, presented to the court a sufficient theory on which to base instructions respecting the several degrees of manslaughter to which we have referred. Section 5681 of the General Statutes of 1901 requires the court, in a criminal case, to state to the jury all matters of law which are necessary for their information in giving a verdict. This must be done without request from the defendant. (*Craft v. The State of Kansas*, 3 Kan. 450.)

The judgment of the court below will be reversed and a new trial granted.

All the Justices concurring.