THE STATE OF KANSAS V. CHARLES R. STEVENSON.

No. 14,830.    (85 Pac. 797.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*New Trial—Misconduct of Jury.*  It is not error to deny a motion for a new trial in a criminal case for misconduct of the jury, unless the facts are such that the court may presume that prejudice resulted therefrom to the defendant.

2. ——— *Instruction—Statutory Definition of Manslaughter.* In a trial upon a charge of murder it is not error for the court to define the crime of manslaughter in the second degree in the language of the statute.

Appeal from Rawlins district court; ABEL C. T. GEIGER, judge.    Opinion filed June 9, 1906.    Affirmed.

*C. C. Coleman,* attorney-general, *Fred S. Jackson,* assistant attorney-general, *D. O. Bye,* county attorney, and *J. P. Noble,* for The State.

*W. S. Morlan,* and *Fred Robertson,* for appellant.

The opinion of the court was delivered by

GREENE, J.: Charles R. Stevenson and John Tutt engaged in a personal encounter which resulted in Stevenson's shooting and instantly killing Tutt. Stevenson was convicted of manslaughter in the second degree, from which conviction he prosecutes this appeal.

Appellant's first contention is that the evidence was not sufficient to justify the jury in finding him guilty of manslaughter in the second degree. Upon this question suffice it to say that there was some very strong testimony of defendant's guilt, from which the jury could very properly and justly return the verdict which they did.

His next contention is that he was prejudicially affected because a volume of the General Statutes of Kansas was in the room with the jury during their deliberations. Upon the motion for a new trial several

of the jurors were sworn and testified that the statute-book was in the room during their deliberations, and H. F. Larsen, one of the jurymen, in his testimony said:

"I don't remember who it was, but somebody asked what manslaughter in the first degree was. . . . Some one else said that we would find that in the statute of Kansas, and I mentioned then the statute of Kansas lay right there, but not with the intention that we want to use it. I remember Charley Brown said that we have no right whatever to use the statutes of Kansas in deciding this case and the book was not touched at that time."

Mr. Brown, another juror, testified that before they had arrived at a verdict he saw D. W. Anderson, the foreman of the jury, open the statute-book and examine it about a minute; that he was "looking at the paragraphs along the front just like he was going to hunt something up."

All of the jurors who testified concerning this fact stated that the statute-book and its contents were not discussed by any of the jurors at any time, and there was no testimony tending to show that it was opened by any juror, except the testimony of Mr. Brown concerning Anderson's examination, and no reference whatever was made to the statute-book during the deliberations, except the statement that the definition of manslaughter could be found in it. It has been held in this court that the use by the jury of documents the contents of which might influence them is misconduct, and prejudice will be presumed. (*The State v. Lantz,* 23 Kan. 728, 33 Am. Rep. 215; *The State v. Clark,* 34 Kan. 289, 8 Pac. 528.) In the present case, however, no use appears to have been made of the statutes in the deliberations. The mere presence of the statute-book in the room where the jury were would not of itself be prejudicial to the appellant, although its use might be. The idea of examining it to ascertain what the definition of manslaughter might be, if such an

idea was entertained by any member of the jury, was promptly suppressed by the statement of one of them that they could not examine it but must be governed solely by the instructions. The rights of appellant could not, therefore, have been prejudicially affected. by the mere presence of the statute-book in the room while the jury were deliberating.

Another contention is that the jury, while deliberating, were permitted to separate. The only testimony on this point was given by Charley P. Hill, one of the jurors, who testified as follows:

"Ques. You went out with the jurors and left the other jurors in some of the time? Ans. I think the jury was divided in going out a time or two, possibly three times.

"Q. So far as you know you don't know what each juror did during the time you were not in the jury-room? A. Not all the time."

There is no showing that these separations of the jury were not necessary to attend to the calls of nature, or that the bailiff was not with those absent. There is no claim that while out of the jury-room they came in contact with other persons. The jury were deliberating from five o'clock P. M. until the next morning. A mere suspicion that jurors might have been guilty of misconduct is not sufficient to justify a court in setting aside a verdict. The evidence in this case on that question does not even raise a suspicion of misconduct.

. The contention that the court erred in its instruction defining manslaughter in the second degree is not deserving of much attention. The instruction given follows:

"Next, as to manslaughter in the second degree, so far as any definition of manslaughter in the second degree is concerned, that can in anywise be deemed applicable to the evidence in this case, it is the unnecessary killing of another either while resisting an attempt by such other person to commit any felony, or to do any other unlawful act, after such attempt shall

have failed, shall be deemed guilty of manslaughter in the second degree."

It will be observed that the instruction is in the exact language of the statute, and is clear and easily understood, and the jury could not have misunderstood it. Where a statute defining a particular crime is couched in language easily understood the court may always quote such language in defining the crime. If such statute were so long and involved or so obscure that the jury might be misled or unable to understand it readily it might be the duty of the court to explain it, but such a rule can have no application to the statute under consideration. There was no error in defining manslaughter in the language of the statute.

The judgment of the district court is affirmed.

All the Justices concurring.