No. 27,909.

THE STATE OF KANSAS, *Appellee*, v. RALPH VANDRUFF, *Appellant*.

(264 Pac. 1060.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Appeal—Necessity of Presenting Evidence in Motion for New Trial*. The provision of the civil code (R. S. 60-3004) that where the ground of a motion for new trial is error in the exclusion of evidence, such evidence shall be produced at the hearing of the motion by affidavit of the witness, applies to the trial of criminal cases.

2. HOMICIDE—*Manslaughter in the Second Degree—Statutory Definition*. The provisions of R. S. 21-412, giving definition of manslaughter in the second degree, is not seriously ambiguous.

3. HOMICIDE—*Evidence—Conviction on Defendant's Rather than State's Testimony*. One charged with murder, and who gives testimony tending to show that the offense was manslaughter in the second degree, as defined by R. S. 21-412, cannot complain of a conviction under that statute by reason of the fact that the evidence on the part of the state did not support it.

4. CRIMINAL LAW—*Misconduct of Counsel—Necessity of Objection to Predicate Error*. Rule followed that misconduct of counsel in argument to the jury is not available as ground for reversal where no objection was made to it and no request was made for a ruling thereon, or for an instruction to the jury concerning it.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed March 10, 1928. Affirmed.

*C. W. Burch, B. I. Litowich, LaRue Royce* and *H. C. Tobey*, all of Salina, for the appellant.

*William A. Smith*, attorney-general, *Roland Boynton*, assistant attorney-general, and *Bryan J. Hoffman*, county attorney, for the appellee; *A. R. Buzick, Jr.*, of Salina, and *C. E. Rugh*, of Abilene, of counsel.

The opinion of the court was delivered by

HARVEY, J.: Ralph Vandruff was charged with murder, and on trial was found guilty of manslaughter in the second degree, as defined by R. S. 21-412. He has appealed, and contends that the court erred in excluding evidence offered on his behalf; that the statute (R. S. 21-412) was never intended to apply to facts shown by this record, and that it is inconsistent in its terms; that the facts do not support a conviction under this statute; and that the court erred in refusing to give instructions requested, and in instructions given,

Argument of Counsel, 46 L. R. A. 641; 38 L. R. A. n. s. 1133; L. R. A. 1918D 41; 2 R. C. L. 438. Criminal Law, 17 C. J. pp. 62 n. 94, 89 n. 65, 209 n. 85. Homicide, 29 C. J. p. 1162 n. 4.

State v. Vandruff.

and that defendant was prejudiced by the closing argument of counsel for the prosecution. A brief general statement of facts is as follows:

Grand avenue, in Salina, is an east and west street. It is intersected by numbered streets, the one farthest west being Thirteenth street. About 500 feet west of Thirteenth street Grand avenue crosses Dry creek, where there is a bridge, and continues west as a highway. West of Thirteenth and south of Grand avenue there is a row of cottages facing Thirteenth, with an alley west of them. West from this alley to the Needler place is an alfalfa field. Mr. Needler and his wife live in a cottage south of Grand avenue, east of and near Dry creek. Mr. Needler had an auto-parking place south and west of his house. North of Grand avenue and east of Dry creek is an unimproved tract of timberland. This tract is not within the corporate limits of the city. A road, much like an old wagon trail, leaves Grand avenue about 60 feet east of the bridge and runs north into this timber tract for about 150 feet, where it passes between two big trees, and soon thereafter disappears. From the big trees to Grand avenue the timber had been cleared away, and north of the trees a circular patch had recently been cleared, and in this patch were stumps and some brush piles. Between this road and the creek west of it there had been a row of hedge. This had recently been cut, leaving a row of stumps. Brush had been burned, leaving an ash pile about 60 feet south of the big trees and between the row of stumps and the road. Needler had complained to the county and city officers at various times throughout the summer and fall preceding the homicide that sundry persons made use of this tract of timberland north of Grand avenue as a rendezvous, or resort, for parties for drinking, gambling, and for immoral purposes, and had been told by the city peace officers to inform them of any such parties there. A few months before the homicide Needler had got permission from the owner of the land to cut some of the timber and brush thereon, with the view that clearing the land would deprive it of its utility as an unlawful resort, and he had cleared out the row of hedge and some other timber. For a time immediately prior to the homicide the road up through this timbered tract had not been used much for any purpose; the ground was soft; the automobile wheels cut into it.

The deceased, Lawrence Regester, was a student in high school at Abilene, where he resided. On the afternoon of January 23, 1927, he and three other high-school boys, Earl Brown, Roy Shellhasse and John Glahn, in a borrowed Ford roadster, drove to Salina. There they rented a Chrysler two-door sedan, and called upon two girls, Clara Curry and Goldie Schultz, of about their own age, one of whom was a high-school student at Salina. Three of the boys knew these girls, having met them, or called on them, on previous occasions, and while they had made no appointment for that occasion, the girls were looking for the boys to call. They saw the boys drive up, went out to the car, were invited to ride, and got into the car. Someone spoke of getting another girl or two. One of the girls suggested Yvonne Meyers, another Salina high-school girl, and they drove to her home, invited her to join them, which she did. The seven young people drove about the city of Salina for two hours, or more, until about 5:30 o'clock, when, after making a date for the evening, they took Miss Curry to a place on Ninth street, where she worked, and the other two girls up to the Schultz home. The boys went to a restaurant for supper, spent some time at the Y. M. C. A., where they cleaned up. They got the two girls at the Schultz home about 7:30, and Miss Curry at her home about 8:15 o'clock. They drove about the city and stopped a few minutes at the Winters home on Grand avenue between Eleventh and Twelfth streets, where other young people were. Earl Brown and Clara Curry got out of the car and visited with the other young people, while the rest of the party drove west on Grand. Just after they had passed Thirteenth street, and between that and the bridge over Dry creek, they overtook and passed a Ford coupé occupied by two other Abilene boys with their Salina "dates." The coupé did not cross the bridge, but turned around on the alfalfa field east of the Needler house, driving within fifteen feet of it, back to Grand avenue and east. Those in the Chrysler went on across the bridge west a half or three-quarters of a mile from Dry creek, turned around and drove back and around a block to the Winters home. There Earl Brown and Clara Curry got in the car again and the parties drove west on Grand avenue. As they neared Dry creek one of them looked back and saw a car approaching, and thought it was the other car containing the Abilene boys. The driver of the Chrysler, noticing the road turning off to the

north into the timber, suggested he would pull in there to "ditch" the Abilene boys. They drove in on this road as far as the big trees, turned around so their car was facing Grand avenue, killed the engine and put out the headlights; the parking lights were left burning.

The defendant, Ralph Vandruff, was a policeman regularly on the police force of the city of Salina, and had been in that capacity about seven months. Previous to that time he had been a policeman at Salina for about two years, but had been asked to resign because of his drinking intoxicating liquor while on duty. After that he was employed as a special agent for the Union Pacific Railway Company for several months, but while stationed at Kansas City, Kan., his employment was terminated by the railroad company because he had left his place of duty. On the Sunday evening in question he was sitting in the police headquarters at Salina. His regular time for going on duty was 12 o'clock at night, but he was about the police station, subject to call if needed, as was not infrequent for policemen even when they were not on active duty. About 9 o'clock in the evening, perhaps a few minutes before that time, the desk sergeant at the police station received a telephone call from Mr. Needler, who said:

"This is Needler at the west end of Grand avenue, and there is two cars out here raising hell. I would like to have two officers out here right away."

Needler explained over the telephone that he conducted the tourist camp out there. The police sergeant gave a signal known to the policemen about the city that there was a call at headquarters, and the police captain, Walter Bueche, responded promptly by going to the station, and there learned about the Needler call. He spoke of getting one of the other policemen then on active duty to go with him, but Vandruff said there was no need of that—he would go. Bueche and Vandruff got in the police car, Bueche driving, and went out west on Grand avenue, and when nearly to the bridge over Dry creek they turned to the north on the road into the timber tract. When they turned in to this road the lights from their car reflected on the glass windshield of the Chrysler, then standing near the big trees about 150 feet north of Grand avenue. Soon after the police car turned in on this road and started north the lights were turned on the Chrysler and it started to move south. When about half way of the distance from Grand avenue to the big trees Bueche,

driving the police car, swung to his right and then to his left so as
to place his car crossways of the road in front of the Chrysler, but
the Chrysler, turning perhaps a little to the south of the road, drove
by the police car on toward Grand avenue. As Bueche had started
to make the swing, first to his right and then to the left to cross the
road, Vandruff stepped out of the police car, let it pass him and
walked directly west so as to place him in front, or almost in front,
of the approaching Chrysler car. Just as it passed him, or directly
thereafter, he fired three shots. One of these entered the body of
the car from the back near the left corner about four inches above
the fender. Lawrence Regester was sitting on the left side of the
rear seat of the Chrysler in such a position that the bullet entered
his body at his postaxillary line about the height of his waist band,
coursed downward on the right side, through his colon near the
appendix, pierced his bladder and lodged against the base of the
pelvic bone. The Chrysler car pulled on out on Grand avenue and
turned east and stopped in about a block. The police car turned
around, followed and overtook the Chrysler, and stopped. It was
found that Regester was badly wounded; he was taken to the hos-
pital and died about five or six hours later.

The surviving occupants of the Chrysler car testified that they
knew nothing of the reputation of this tract of timber land north of
Grand avenue as being a place frequented by people for unlawful
purposes, that none of them had ever been to that place before, and
that their only purpose in driving into that place on the evening in
question was to get away from, or avoid, the car driven by the other
Abilene boys. Their testimony is that their car had been stopped
but a few minutes—not to exceed five minutes—when they saw what
proved to be the police car driving into the road from Grand avenue.
There were seven young people in the car, two boys and two girls
in the back seat and two boys and one girl in the front seat. It
seems that in driving about town the boys had taken turns in driving
the Chrysler car. When the car was stopped near the big trees the
two boys in the front seat got out, walked around back of the car
and changed sides.

There is little conflict in the testimony in this case except as to the
relative position of the parties and the immediate incidents of the
shooting. Those in the Chrysler car testified that as they started to
drive out to Grand avenue when they saw the other car turn into the

road toward them they passed the other car. They did not see it swing to the right and attempt to cross the road in front of them; that in fact it did not cross the road in front of them, and, so far as they knew, they drove directly down the road to Grand avenue, but not being familiar with it they might have driven a little to the right of the road part of the way. They say they did not see the defendant Vandruff, nor hear any command to halt; that the first they knew of any shooting was when they heard the shots—and some of them say they heard "thumps" on the back of the car; that immediately after the first shot Regester said to Shellhasse: "Shelly, did you feel that sting." Shellhasse replied: "No, I didn't feel any sting." Regester then said he was shot. Some of the occupants of the car say there were two shots after that, indicating the first shot fired was the one that caused the death of Regester. Soon after discovering that Regester was shot they slowed up and stopped.

The defendant's testimony was that he stepped out of the police car when Bueche made the swing to the right, let it pass him, walked directly west to a place between the road and the row of hedge stumps, and stood directly in front of the approaching Chrysler car; that he had a flashlight strong enough that he could identify a man 150 feet, which he threw directly on the approaching car; that he was dressed in police uniform, with a star on his coat; that he unbuttoned his overcoat and threw it back so his star could be seen, also the holster in which he carried his revolver could be seen; that he stood directly in front of the Chrysler car and called, "Halt"; that the driver of the Chrysler car drove directly at him as though to run over him, and that he was compelled to step to one side to keep from being run over and injured; that as the Chrysler car passed him he fired one shot at the tire of the hind wheel when it was just opposite him, but evidently missed it, as no evidence of that shot could be found on the car; that as soon as the car passed him he stepped immediately behind it, took deliberate aim and fired at the left hind tire. This was the shot which he thinks went a little higher than he aimed it and entered the body of the car near the left rear corner about four inches above the fender. He then ran several steps after the car, calling "Halt," and fired again. A bullet from his pistol had evidently struck the back of the car almost at the top, going through the rear curtain and the top. There were only two bullet marks on the car. He testified he had heard the summer before the bad reputation of this locality; that he suspected the oc-

cupants of the car were there for the purpose of drinking intoxicating liquor, or for immoral purposes; that when the driver of the car attempted to run over him he thought he had a right to stop the car, and that he attempted to do so by shooting the tires. The pistol used was a 38-caliber special, capable of carrying a bullet 250 yards with deadly effect.

Turning now to the questions presented by appellant. It is contended that the court erred in excluding the offered testimony of the witness Fitch, the chief of police, to the effect that it was the custom of officers in the city of Salina and in the state to shoot at tires of automobiles in order to halt fleeing offenders, and that recently he had shot at the tires of a car which had run him to the curb and which carried fleeing offenders, and the testimony of Bueche, captain of police, to knowledge of the same custom. Appellant is not in position to present that question for the reason that affidavits of these witnesses with respect to that matter were not presented on the motion for a new trial. The provision of the civil code (R. S. 60-3004) that excluded testimony, to be the basis of error, must be offered by the affidavit of the witness on the motion for a new trial, is applicable to criminal cases. (*State v. Wellman,* 102 Kan. 503, 512, 170 Pac. 1052; *State v. Schroeder,* 103 Kan. 770, 771, 176 Pac. 659.) The defendant did testify to his understanding of a custom of that kind, but also testified that he had never practiced it. But in addition to that, any evidence of a general custom of that kind would not be competent. There may be circumstances in which officers would be justified in shooting at the tires of a car, or even at its occupants, but an indiscriminate custom of that kind would not be justified.

It is contended that the statute under which the conviction was had is inconsistent in its language and unintelligible if carefully analyzed. The statute reads:

"Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or do any other unlawful act, after such attempt shall have failed, shall be deemed guilty of manslaughter in the second degree." (R. S. 21-412.)

While on a careful analysis the language could perhaps be improved upon, it is not seriously ambiguous, and its meaning is reasonably clear. In *State v. Stevenson,* 74 Kan. 193, 85 Pac. 797, where the court had given an instruction on manslaughter in the second degree in the language of this statute, it was said:

State v. Vandruff.

"It will be observed that the instruction is in the exact language of the statute, and is clear and easily understood, and the jury could not have misunderstood it." (p. 196.)

It is contended that the evidence does not support a conviction under this statute. That is true if we look only to the testimony of the witnesses produced by the state. Under their testimony no felony or other unlawful act had been committed or attempted. But the defendant testified to a state of facts which makes the statute applicable. Passing the suspicion of the defendant that the occupants of the Chrysler car were committing, or attempting to commit, some felony or other unlawful act, and that their attempt to do so had failed—for his suspicion in that regard does not arise to the dignity of a proof of it—he testified that he stood directly in front of the oncoming Chrysler car, that the lights of the car were shining brightly upon him, that its occupants could not help seeing him and recognizing that he was a policeman, and that they deliberately tried to run the car over him and do him injury, and that the attempt to do so had failed. We presume defendant gave his testimony with the hope and expectation that the jury would believe it. He is hardly now in position to complain that they did so. His testimony made it necessary for the court to give an instruction under this statute, for the court was required to instruct on all degrees of homicide on which a conviction might be had under any reasonable view of the evidence, even though such evidence were that of the defendant alone. (*State v. Buffington*, 66 Kan. 706, 72 Pac. 213; *State v. Clark*, 69 Kan. 576, 77 Pac. 287; *State v. Newton*, 74 Kan. 561, 87 Pac. 757; *State v. Hardisty*, 121 Kan. 576, 580, 249 Pac. 617.) There is no serious contention that the shooting was necessary. If defendant's purpose was to identify the car and later apprehend its occupants there was no necessity of shooting the deceased, or shooting at the car at all. It had a numbered license plate on the rear, also had a tire cover on which was printed in letters large enough to be seen for some distance the name of the Chrysler dealer at Salina. With his flashlight defendant could readily have learned the number on the license plate and the name of the dealer, from which, in all probability, identification of the car could have been made. But he testified that he paid no attention to the number, or to the name of the dealer on the tire cover— that the number meant nothing to him. The felony, or other unlawful act, was the deliberate attempt of the occupants of the car

to run over and injure defendant. This had failed. The homicide was unnecessary. This established a state of facts within the statute. (*State v. McCarty,* 54 Kan. 52, 36 Pac. 338; *State v. Young,* 109 Kan. 526, 532, 200 Pac. 285.)

But it is contended that Lawrence Regester, who was killed, was not driving the car, was sitting in the rear seat, hence that the effort of the driver of the car to run it over defendant was not the effort of Regester. The point is not well taken, and appellant is not in good position to raise it. He requested, and the court gave, an instruction:

"If two or more persons are engaged in a common enterprise, and if with the same purpose and design they coöperate in doing an act which is unlawful and the doing of which constitutes a crime under the law, each of them is guilty of the commission of the crime."

This instruction was requested and given with the evident purpose of connecting all of the occupants of the Chrysler car with the unlawful act of any of them. It states a rule of law frequently applied, and in any event it became the law of this case on the request of defendant, and he is not now in position to complain of it.

Complaint is made in other respects concerning instructions requested and instructions given. We have carefully examined the various contentions of appellant in this regard and find no material error therein. It would prolong this opinion unnecessarily to set out these instructions in full and to discuss appellant's contentions concerning them. It is sufficient to say that all proper material instructions requested by appellant were given, at least in substance, and that the instructions given fairly presented the case to the jury.

Appellant complains of misconduct of counsel for the prosecution in the language used in the closing argument to the jury. The language was not objected to at the time, nor was it taken by a stenographer. In support of the motion for a new trial defendant's affidavit was filed as to statements complained of in the argument. On behalf of the state affidavits were filed in rebuttal, denying in a general way much of the matter contained in defendant's affidavit. In this connection we wish to note that the attorney whose remarks were complained of made no affidavit which was filed in the court below, or which was considered by the trial court. He has, however, made an affidavit which was filed in this court and which counsel for the state have incorporated in the counter abstract. This affidavit has no place in this case. It should not have been incorporated in the counter abstract, for it was not a part of the

State v. Vandruff.

record in the court below, and we shall not consider it. We shall determine the question of misconduct of counsel as though that affidavit had not been filed. So considering it, we first note that no objection was made at the time. It has been repeatedly held that a party who does not at the time object to arguments and give the trial court an opportunity, if necessary, to admonish counsel and the jury, cannot be heard to complain. Late cases on the question are *State v. Messmer*, 123 Kan. 201, 203, 254 Pac. 378; *State v. Ragan*, 123 Kan. 399, 256 Pac. 159. There are many earlier ones. But on this point appellant cites the case of *State v. Powell*, 120 Kan. 772, 245 Pac. 128, where it was held an objection to improper argument was not necessary, but the opinion states as a reason that objection was not necessary in that case:

"In this instance the defendant had no ground upon which to base an objection, for the court had opened the way for the proceeding to become nonjudicial. The argument was based upon evidence the court had admitted over defendant's protest, and was consonant with the stated theory upon which the evidence was offered." (p. 800.)

This cannot be said here, and the reason given in *State v. Powell*, supra, for the lack of necessity of calling the attention of the court to what was claimed to be an improper argument, does not apply. Since the trial court heard the argument and had his own recollection and judgment as to what had been said, and the language complained of was not taken by the reporter so we might know what was said, and the interpretation placed upon it by defendant in his affidavit was controverted in a general way by several affidavits, it may well be that the court did not find it to be true that counsel in his argument made all of the statements charged to him by defendant in his affidavit, or made any statements that were seriously out of the way, or as amounting to misconduct. If that were the court's view it was proper for the motion for a new trial not to be sustained for that reason. Error in this regard has not been established.

Finding no prejudicial error in the case, the judgment of the court below is affirmed.

JOHNSTON, C. J., and MARSHALL, J., dissent on the ground that the evidence does not support the judgment of conviction under R. S. 21-412.

BURCH, J., not sitting.