No. 30,896.

THE STATE OF KANSAS, *Appellee*, v. JOHN FELIEN JONES, *Appellant*.

(20 P. 2d 514.)

Opinion filed April 8, 1933.

*J. W. Ward,* of Wichita, and *George Stanley,* of Arkansas City, for the appellant; *A. Faulconer, K. W. Dale* and *C. L. Swarts,* all of Arkansas City, of counsel.

*Roland Boynton,* attorney-general, *E. E. Steerman, R. O. Mason,* assistant attorneys-general, *E. T. Bloomer,* county attorney, and *W. L. Cunningham,* of Arkansas City, for the appellee.

The opinion of the court was delivered by

THIELE, J.: Defendant was found guilty of murder in the second degree and appeals, specifying fourteen assignments of error.

John Felien Jones had four grown sons. With his wife he had

lived on a small farm near Arkansas City. His wife died six or seven months before the homicide occurred. In 1928 Elsie Jones brought suit for divorce against the defendant, and she was given the home place, which she mortgaged for $2,500, which defendant received. The murdered son was a witness for his mother, a fact the father resented. Immediately after the divorce suit was concluded, the defendant stated he would get the farm, and that his son Carl had caused the trouble and he would kill him. A number of witnesses were produced who testified to statements of the defendant showing his intense hatred of his son Carl and his use of vile and vituperative language when referring to him. The mother left a will in which she gave the land to Carl with a direction that he pay his stepdaughter, Elizabeth Walworth, who was murdered on the same day, a reasonable amount for services rendered by her to the testatrix. After the will was admitted to probate, Elizabeth Walworth filed her claim against the estate. The three other sons, Harry, Neil and Emil, brought suit to contest the will and also made arrangements to defeat the Walworth claim. In July of 1929 the defendant and his son Harry Jones called on the county attorney and attempted to have him proceed against Carl, who they claimed had a still on his farm. The defendant then stated he had turned it (his complaint) in to the officers at Arkansas City and Winfield; that he was going to Texas and when he got back he would get some more information. At this interview, as testified to by the deputy sheriff who was present, he said he was going to do away with Carl and Elizabeth if anybody else wouldn't do anything. Immediately thereafter the defendant went to Texas with his son Harry, where he remained for about a month when, from statements made in a letter written by one of the sons, he apparently went to Kentucky for a short time and then returned to Augusta, Kan., where he was employed in a garage. There was other testimony with reference to trouble between the defendant and his wife and son Carl, but the above statement indicates the trend of it.

On or about October 26, 1929, the exact time not being known, Carl Jones was killed in a roadway near his home and Elizabeth Walworth was killed in the house. A revolver was found by her body. Shortly after the crime was discovered the defendant was arrested. At that time his car was in a garage, cleaned up, loaded with his effects and ready to go. The defendant claimed that he

practically lived·in his car. The sons Harry and Neil were likewise arrested, and the father and the two sons were charged jointly in one information with the murder of Carl Jones and in another information with the murder of Elizabeth Walworth. Separate trials were demanded, and on trial of appellant testimony showing the above facts was introduced, together with the letters and documents hereafter referred to; there was also much other evidence tending to show the presence of the defendant and his son Neil in Arkansas City and near to the farm within three or four days prior to the crime, tending to show·that shells from the shotgun with which the killing was done were purchased by Neil Jones, and many other matters not necessary to detail here. The appellant attempted to prove an alibi as part of his defense and offered much testimony in contradiction of the above. As a result of the trial, he was found guilty of murder in the second degree.

The third and eighth specifications of error complain of the admission in evidence of the claim in probate court of Elizabeth Walworth, the last will and testament of Elsie Jones, and the petition and summons in the suit to contest her will, as well as a number of letters found in the car of defendant, five of which were written by Harry to his father, two by Harry to Neil and seven by Neil to Harry. It was the contention of the state that there was a conspiracy by the defendant and his sons Neil and Harry to kill Carl Jones. The defendant claims that no conspiracy was proved and the court documents and letters were therefore inadmissible. The court documents were properly admitted as tending to show the correctness of the claim that the defendant and his sons had a motive in doing away with Carl Jones and Elizabeth Walworth, and this notwithstanding that Carl Jones·had a minor son who is his sole heir. If the will was set aside and the claim of Elizabeth Walworth defeated, Neil, Harry and Emil Jones stood to profit. In so far as the letters were concerned, it is true that the evidence of conspiracy rests on circumstantial evidence; it would be remarkable if it did not, unless one of the conspirators confessed, for conspirators do not advertise their acts. (*Richel v. Coöperative Exchange,* 113 Kan. 592, 215 Pac. 1015.) Outside of the letters, it was shown that the defendant and his son Harry attempted to have Carl arrested; that he had made threats against Carl; that he aided and assisted in preparations to contest the will of Elsie Jones and to defeat the Walworth claim; that he acted as an intermediary between Harry

and Neil; that he, as well as his son Neil, had been in Arkansas City and near the farm on which Carl lived within a day or so of the crime; that shells like those found at the place of the crime were purchased by some person resembling Neil at Arkansas City the night before the crime was discovered. Under these circumstances, together with others shown at the trial, the question of conspiracy was for the jury and the letters were competent. (16 C. J. 664.)

The fifth specification of error complains of instructions given the jury, and the eleventh that, during deliberations of the jury, the court orally instructed the jury and coerced a verdict. In so far as the instructions given are concerned, the record fails to show any objection by the defendant, or that he requested any other or different instructions, and he is not now in a position to complain. (*State v. Wolfley* [on rehearing], 75 Kan. 413, syl. ¶ 2, 89 Pac. 1046; *Stewart v. Marland Pipe Line Co.*, 132 Kan. 725, syl. ¶ 4, 297 Pac. 708; 16 C. J. 1070.) Nevertheless, we have examined the instructions. The third instruction was that homicide is divided into six degrees and that there was no evidence to warrant a finding of any degree of manslaughter, and the fourth instruction defined murder in the first and second degrees. Defendant argues there was no evidence to warrant a finding of murder in the second degree. Here the evidence was circumstantial in a large measure, there was evidence a revolver was found by the body of Elizabeth Walworth; the jury, under all the circumstances, might believe that some element of willfulness, deliberation or premeditation was lacking, and the court was warranted in giving the instructions. (*State v. Patterson*, 52 Kan. 335, 34 Pac. 784; *State v. Moore*, 67 Kan. 620, 73 Pac. 905; *State v. Clark*, 69 Kan. 576, 77 Pac. 287; *State v. Woods*, 105 Kan. 554, 558, 185 Pac. 21; *State v. Cunningham*, 120 Kan. 430, 243 Pac. 1006.) The third and fourth instructions were correct and properly given. The tenth instruction relates to circumstantial evidence and the degree of proof required. Under *State v. Asbell*, 57 Kan. 398, 410, 46 Pac. 770; *State v. Pack*, 106 Kan. 188, 190, 186 Pac. 742; *State v. Ward*, 107 Kan. 498, 504, 192 Pac. 836, and *State v. Evans*, 115 Kan. 538, 541, 224 Pac. 492, the instruction was sufficient. See, also, 16 C. J. 1008 *et seq.* and 8 R. C. L. 225. The remaining instructions complained of have been examined. Defendant's objections thereto are based on his version of the facts. We find no error in the instructions.

The sixth specification of error complains that the court did not instruct on all matters of law necessary. No request for instructions was made, the specification itself and the brief do not indicate what further instruction the defendant believes should have been given. No error can be predicated upon omission to give any particular instruction when no request is made. (*State v. McDonald,* 107 Kan. 568, 571, 193 Pac. 179; *State v. Hobl,* 108 Kan. 261, 194 Pac. 921; *State v. Wilson,* 108 Kan. 433, 436, 195 Pac. 618; *State v. Sargent,* 126 Kan. 200, 268 Pac. 98; *State v. Redman,* 128 Kan. 712, 280 Pac. 754.)

Complaint was made in the seventh specification on account of exclusion of testimony. No proper showing on motion for new trial was made, and the matter cannot now be considered. (R. S. 60-3004; *State v. Vandruff,* 125 Kan. 496, 502, 264 Pac. 1060.)

The eleventh specification of error is based on remarks made by the court to the jury when inquiring as to the state of their deliberations, the claim being made that the court orally instructed the jury, and that the effect of what was said coerced a verdict. After the jury had been out some hours, it was brought into the court room and the court inquired as to its progress, and in the course of dialogue with the foreman stated it was not the policy of the court to force a verdict, that it was the duty of the jury to reach a verdict if they could do so without compromising their own absolute beliefs; that lawsuits were expensive, and inquired as to whether there was any feeling among the jurors, and upon being informed the feeling was good, inquired as to whether the jury was evenly divided, and was advised it was "very much one-sided." The foreman then stated, "The word 'circumstantial' has seemed to be our difficult word." The court then in substance repeated the instruction with respect to degree of proof under circumstantial evidence, and then the court said:

"I think you had better deliberate a little longer. In any case where a jury has deliberated a day and a half and are about equally divided the court never feels like it is of any value to keep the jury out, but where, as you say, it is nearly all one-sided one way or the other—I don't want to know which way—I don't want you to tell us—where it is almost overwhelming one way, it seems that maybe a discussion of the facts and due consideration from each juror to the view of the other jurors, you can come to some conclusion."

As to the claimed oral instruction, appellant cites, among other

cases, *State v. Stoffel,* 48 Kan. 364, 29 Pac. 685, where the court gave further instructions orally after charging the jury, and *State v. Bennington,* 44 Kan. 583, 25 Pac. 91, where part of the instructions were in writing and part given orally, taken by the stenographer and later reduced to writing, and *City of Atchison v. Jansen,* 21 Kan. 560, a civil case where the court did not, upon proper request, instruct in writing as provided by statute, and other cases which for plainly apparent reasons are not controlling here. More to the point is *State v. Potter,* 15 Kan. 302, wherein, after quoting the statute and reviewing many decisions, Mr. Justice Brewer states:

"Where a juror propounds a question to the court, it may make a direct answer without reducing the same to writing, provided in so doing it does not make an independent statement of a rule of law; in other words, where the question of the juror is the full statement of the rule, and the answer is no more than an affirmation or denial, such affirmation or denial need not be reduced to writing before it is given. It may be remarked in reference to these propositions, and especially the last, that the purpose of this statute is to secure to the defendant the exact rulings of the court, in order that he may avail himself of any error in those rulings; that it was not intended to cast any unnecessary burdens upon the court, or to hamper and restrict communications between the court and jury; that it should be so construed as fairly to secure that purpose, and not made a mere weapon of technical error; that in reference to answers to questions, as there is nothing to require the questions to be reduced to writing before they are put, it would seem trifling to compel the answer to be so reduced when the answer is simply responsive, and depends for its meaning upon the unwritten question. It seems to us that, tested by this last rule, the oral statement in this case must be held not a violation of the statute, and no ground for reversal." (p. 320.)

In our view of the matter the claimed oral instruction was only a response to the foreman's question and was only a statement, using different language, of the written instruction. If any error was made, it was technical; there is no showing it affected the substantial rights of the defendant, and it must be disregarded. (R. S. 62-1718.)

We are not impressed with the argument that the jury was coerced into rendering a verdict. (See *State v. Young,* 109 Kan. 526, 530, 200 Pac. 285; *Alcorn v. Cudahy Packing Co.,* 125 Kan. 493, 264 Pac. 741.)

The twelfth specification pertains to the qualifications of a juror, the matter being presented on motion for a new trial. After an exhaustive examination the court found against appellant's contention. In our opinion the court committed no error. (See *State v. Snow,* 121 Kan. 436, 443, 247 Pac. 437, and cases cited.)

In the thirteenth specification, complaint is made that the state's attorney made reference to the fact that Neil Jones, a codefendant, did not testify. This is not error. Under the provisions of R. S. 62-1420, he was not incompetent, he was not on trial in the present action, and is not included in the provision—

"That the neglect or refusal of the person on trial to testify . . . shall not raise any presumption of guilt, nor shall that circumstance be referred to by any attorney prosecuting in the case. . . ." (See 16 C. J. 906.)

The fourteenth specification pertains to alleged misconduct by counsel for the state in including in his opening statement that the evidence would show that there were blood spots on defendant's car, when he knew, and it was later admitted, that the blood spots were not human blood, and would further show that a codefendant sent his clothes to be washed and his car was being washed shortly after the crime was committed. On this point we are not assisted by the briefs. What happened after the statement was made? The witness Walworth testified Neil Jones told him he had blood on his car. The deputy sheriff, called as a witness by the defendant, stated there were spots on Neil's car, one on the right front seat and others on the right running board, and "I am not smart enough to tell whether they were blood. That is what I thought they were." After he was cross-examined, the state admitted that, in the opinion of an expert who made an analysis of the blood spots, it was not human blood. As to whether the cars were washed and when, there was dispute in the testimony. The precise question here involved has not been raised in this court. In 16 C. J. 890 appears the following:

"The prosecuting attorney may generally, in opening his case to the jury, fully outline the facts which he expects, and which it is competent for him to prove; and, although he states facts which are not followed by proof because the facts themselves are irrelevant, or because he fails to introduce any evidence or introduces incompetent evidence to support them, his statement is not error, if he acts in good faith and with reasonable grounds for supposing that he can prove the facts as stated, especially where they relate to the transaction or act directly, resulting in the consummation of the crime."

Perhaps counsel went too far in leaving out the word "human" in his statement, thus being open to the charge that he was deceiving the court and jury, for it must be assumed that he knew of the expert's opinion when he made the statement, but we are not prepared to say that the making of the statement is reversible error. There is no showing that defendant asked the court to instruct the

jury to disregard the remarks made, as he should have done if he wanted the question reviewed. (*State v. Vandruff,* 125 Kan. 496, 264 Pac. 1060, and cases cited.) There is no showing of any kind that the statement affected the substantial rights of the defendant, and we are compelled to disregard the error, if any. (R. S. 62-1718.)

The second and fourth specifications with reference to the court's remarks and examination of jurors have been examined, and found not to be substantial.

The remaining specifications, pertaining to motion for new trial, that the verdict was given under the influence of passion and prejudice, and that the verdict is contrary to law and the evidence, are without merit.

The judgment of the lower court is affirmed.