THE STATE OF UTAH, Respondent, v. ARTHUR J. VAN KURAN, Appellant.

### No. 1360.  (69 Pac. 60.)

1. **Embezzlement: Instructions: Good Character: Effect of Proof.**

   On a prosecution for embezzlement, where the proof was all circumstantial, and related to false entries in the books of defendant as treasurer of a corporation, to which others also had access, it was error to give an instruction limiting the consideration of evidence as to defendant's good character to the determination of whether the witnesses testifying to the criminating facts had been mistaken or had testified falsely, as all the testimony of these witnesses might have been true, and still the crime committed by another.

2. **Same.**

   On a criminal prosecution, where the evidence was circumstantial, and testimony as to the defendant's good character had been introduced, the court should have charged that such evidence

State v. Van Kuran.

should be considered and weighed the same as other evidence, and that it in itself might not only create a reasonable doubt of guilt, but might carry conviction of innocence.[1]

**3. Same.**

In connection with a charge limiting the effect of evidence as to defendant's good character to the determination of the weight of the other evidence, an instruction that, if the jury believed that the defendant committed the crime in question, they should find him guilty, although he had previously sustained a good reputation, was error, as he was entitled to have evidence of his good character considered, the same as any other established fact.

(Decided June 4, 1902.)

Appeal from the Third District Court, Salt Lake County.— *Hon. S. W. Stewart,* Judge.

The defendant was prosecuted for, and convicted of, the crime of embezzlement. Upon being sentenced to imprisonment in the State prison, he appealed.

REVERSED.

*Messrs. Powers, Straup & Lippman* and *H. E. Booth, Esq.,* for appellant.

Clearly there was error in the charge of the court upon the subject of character and in the refusal to give the instructions requested by the defendant. State v. Blue, 17 Utah 183; People v. Doggett, 62 Cal. 27; People v. Shepardson, 49 Cal. 631; People v. Hancock, 7 Utah 177-8; Fields v. State, 11 Am. Rep. 771; Springfield v. State, 38 Am. St. 91; 5 Am. and Eng. Ency. Law (2 Ed.), p. 867, and cases. The court charged the jury that "the precise time, or the amount alleged in the information are not material. It is sufficient if

---

[1]State v. Blue, 17 Utah 175; 53 Pac. 978; People v. Hancock, 7 Utah 170, 25 Pac. 1093.

it appears from the evidence, beyond a reasonable doubt, that the defendant embezzled the moneys charged in the information or some part thereof." A general verdict of guilty is only sufficient when there is but one penalty for the offense which is fixed, and there is no variation, according to the grade of the offense. Highland v. People, 1 Scam. (Ill.) 392; Locke v. State, 32 N. H. 106; State v. Redman, 17 Iowa 329; Miles v. State, 3 Tex. App. 58; Thompson v. People, 125 Ill. 256; Collins v. State, 6 Tex. App. 647; Timmons v. State, 56 Miss. 786; State v. Sommerville, 21 Me. 20; State v. Cleveland, 58 Me. 564; Tobin v. People, 104 Ill. 565; Sawyer v. People, 3 Gilm. 54; Thomas v. Stater, 5 How. (Miss.) 20; Sheries v. State, 42 Miss. 331; Dick v. State, 3 Ohio St. 89; McPherson v. State, 9 Yerg. 279; Kirby v. State, 7 Yerg. 259; Colin v. State, 16 Ala. 781.

*Hon. M. A. Breeden,* Attorney-General, *Hon. W. R. White,* Deputy Attorney-General, and *Messrs. Richards & Varian* for the State.

The principal objection relied upon, as we infer from counsel's brief, is that based upon exceptions to the charge in relation to the effect of good character.

The court charged the jury: "You are instructed that evidence of previous good character is competent evidence in favor of a party accused, as tending to show that he would not be likely to commit the crime alleged against him. And in this case, if the jury believe, from the evidence, that prior to the commission of the alleged crime, the defendant had always borne a good character for honesty and truth among his acquaintances and in the neighborhood where he lived, then this is a fact proper to be considered by the jury, with all the other evidence in the case, *in determining the question whether the witnesses who have testified to facts tending to criminate him have been mis-*

*taken or have testified falsely or truthfully;* and if, after a careful consideration of all the evidence in the case, including that bearing upon his previous good character, the jury entertain any reasonable doubt of the defendant's guilt, then it is their sworn duty to acquit him."

By this instruction it is contended that the effect of the good character of the defendant is restricted to a determination of the single question whether the prosecuting witnesses have been mistaken or have testified falsely or truthfully, as evidenced by the language above italicized. If this were, in fact, the true interpretation of the instruction, it seems to us it would still be a correct statement of the law, since the determination of the guilt of an accused person must necessarily depend upon the truth or falsity of the evidence given against him. It will be observed by this instruction, that the court fully informed the jury that evidence of the previous good character of the defendant was competent in his favor, as tending to show that he would not be likely to commit the crime charged, and they were also finally told that, if, after a careful consideration of all the evidence in the case, including that bearing upon his previous good character, they entertained any reasonable doubt of his guilt, it was their sworn duty to acquit him.

Appellant, in his brief, urges error, because the jury were told that time was not material. But the instruction in this particular seems to be in accord with the law. R. S., sec. 4737; State v. Woolsey, 19 Utah 493.

The verdict of the jury is not set out in the abstract, *in haec verba,* but it was as follows:

"We, the jurors impaneled in the above case, find the defendant guilty of embezzlement as charged in the information."

The information charged the defendant with the embezzlement of $8,000. The evidence all tended to show that $8,000 was embezzled. There was no pretense of any smaller

sum.  No effort was made at the trial to show a less amount, and the case was tried upon the theory that the sum was $8,000 or nothing.  The verdict found the defendant guilty as to the whole charge, and this finding negatives the question made by counsel.  A general finding of "guilty" "will be interpreted as guilty of all that the indictment well alleges." Bishop, Cr. Pro., 3 Ed., Vol. 1, sec. 1005a; People v. Magallones, 15 Cal. 426; Armstrong v. People, 37 Ill. 459; Bond v. People, 39 Ill. 27-28; State v. Lawry, 4 Nev. 161.

BARTCH, J.  The defendant was prosecuted for, and convicted of, the crime of embezzlement.  Upon being sentenced to imprisonment in the State prison, he appealed to this court, claiming that his conviction was not lawful, and that a new trial ought to be granted.  From the record it appears that he was charged with unlawfully, feloniously, and fraudulently appropriating and embezzling $8,000 of money belonging to the Oregon Short Line Railroad Company, a corporation, on February 8, 1901; he, as is averred, having been intrusted with the money as the local treasurer of that company.  From the evidence, among other things, it appears that the defendant became the local treasurer of the company in March, 1897, and remained such until this trouble arose; that previous to his employment as such treasurer, and ever since October, 1880, he was chief clerk in the treasurer's department of the Union Pacific Railroad Company at Omaha, Nebraska; that in the course of such employment vast sums of money passed through his hands; that while local treasurer of the Oregon Short Line Railroad Company the money received amounted to $700,000 to $1,000,000 per month, about half of which passed through his office; that the money was deposited mostly in McCornick & Company's and Jones & Company's Banks; that various books were kept in the local treasurer's office, showing the accounts of the company and the accounts with the banks; that the remittances from agents and

conductors, amounting to about a half million dollars per month, were made directly to the banks, and were not handled by the local treasurer's office at all; that the banks would give the treasurer credit, and then send him the deposit slips, to enable him to make the entries in his books; that the money, checks, and drafts received at the local treasurer's office were usually taken to the bank by the chief clerk, but sometimes they were taken by the other clerk, sometimes by the hall boy, and sometimes by the janitor; that three persons had access to these things in the local treasurer's office, and the chief clerk had a key to the office, and had access to the books; that the other clerk and janitor also had keys; that on several occasions discrepancies between the accounts appeared from the books of the treasurer and of the banks, but which, until the present instance, were always found to be mere errors in the accounts; and that the discrepancy or shortage which has resulted in this prosecution amounts, as per such books, to $8,000, which sum, it appears, has not been satisfactorily accounted for by the treasurer.

At the trial it was shown that the defendant, prior to the alleged defalcation, had always borne a good character for truth and honesty, and this forms the basis for the principal question raised upon this appeal. The appellant insists that the court erred in its charge to the jury as to character, and in refusing to charge as requested. Among other things, the defense requested the court to charge as follows: "You are further instructed that good character is an important fact with every man, and never more so than when he is put on trial, charged with an offense which is rendered improbable in the last degree by a uniform course of life wholly inconsistent with any such crime. There are cases (and it is for you to say what weight it shall have in this case) where it becomes a man's sole dependence, and yet may prove sufficient to outweigh evidence of the most positive character. The most clear and convincing cases are sometimes

satisfactorily rebutted by it, and a life of unblemished integrity becomes a complete shield of protection against what otherwise may appear to be proof of guilt.    Good character may not only raise a doubt of guilt which would not otherwise exist, but it may bring conviction of innocence.    In every criminal trial it is a fact which the defendant is at liberty to put in evidence, and, being in, the jury have a right to give it such weight as they think it entitled to."    Another similar request was also submitted by the defense, but the court refused both, and then charged in the following language:    "You are instructed that evidence of previous good character is competent evidence in favor of a party accused, as tending to show that he would not be likely to commit the crime alleged against him.    And in this case, if the jury believe from the evidence that prior to the commission of the alleged crime, the defendant had always borne a good character for honesty and truth among his acquaintances and in the neighborhood where he lived, then this is a fact proper to be considered by the jury, with all the other evidence in the case, in determining the question whether the witnesses who have testified to facts tending to criminate him have been mistaken or have testified falsely or truthfully; and if, after a careful consideration of all the evidence in the case, including that bearing upon his previous good character, the jury entertain any reasonable doubt of the defendant's guilt, then it is their sworn duty to acquit him."    On the theory of this instruction, the evidence of good character could not be considered by the jury for any purpose, except for that of determining whether the witnesses for the prosecution were mistaken or had testified falsely or truthfully.    Such a limitation upon such evidence is especially liable to mislead a jury, where, as in this case, there is no direct proof of the defendant's guilt, but where the criminating evidence consists of testimony relating to discrepancies in accounts appearing in books kept by the defendant, when compared and considered with the books of the bank where the

banking business was done. It might well be that the witnesses testifying to what appeared from those books were neither mistaken nor untruthful in their statements, and that the money was actually embezzled, and yet, as others had access to the books in question, the defendant might not be the guilty person. The possibility that these things may exist in fact is of itself sufficient to show that such a limitation upon this class of evidence can not be sustained in justice to the accused, nor is it warranted in law. In every criminal prosecution the accused is entitled to prove his good character, and, when proven, it is itself a fact in the case— a circumstance tending, in a greater or less degree, to establish his innocence; and the prisoner has a right to have it considered by the jury the same as any other fact in evidence. "Such fact, considered in connection with the criminating facts, may of itself be sufficient to render it highly improbable that the accused would commit the crime charged, and raise a reasonable doubt in the minds of the jury. Where one has led a consistent, upright, and honest life, why should that fact not avail him when accused of an act, a conviction whereof would destroy all his future hopes and aspirations, and take from him that which can profit no man, and which no man can restore? History and experience teach us that there are cases in which the accused's sole defense is a good character, and yet this may outweigh the most positive proof. Conspiracy may charge an innocent man with a crime, and forge its chain of suspicion and falsehood so skillfully that nothing but a life of unblemished integrity and honor can break it. Such evidence is clearly admissible, and may not only raise a doubt as to the defendant's guilt, but bring conviction of his innocence." State v. Blue, 17 Utah 175, 183, 53 Pac. 978. In People v. Hancock, 7 Utah 170, 179, 25 Pac. 1093, where the trial court, in its charge to the jury, limited, in effect, the proof of good character to doubtful cases, this court, holding that the charge was misleading, speaking

through Mr. Justice MINER, said: "There may be cases made out so clear that no good character can make them doubtful, but there may be others in which evidence given against a person without character would amount to a conviction, in which a high character would produce a reasonable doubt, or in which high character would actually outweigh' evidence which might otherwise appear conclusive." In People v. Garbutt, 17 Mich. 9, 97 Am. Dec. 162, Mr. Chief Justice COOLEY, delivering the opinion of the court, said: "Good character is an important fact with every man, and never more so than when he is put on trial, charged with an offense which is rendered improbable in the last degree by a uniform course of life wholly inconsistent with any such crime. There are cases where it becomes a man's sole dependence, and yet may prove sufficient to outweigh evidence of the most positive character. The most clear and convincing cases are sometimes satisfactorily rebutted by it, and a life of unblemished integrity becomes a complete shield of protection against the most skillful web of suspicion and falsehood which conspirators have been able to weave. Good character may not only raise a doubt of guilt which would not otherwise exist, but it may bring conviction of innocence. In every criminal trial it is a fact which the defendant is at liberty to put in evidence, and, being in, the jury have a right to give it such weight as they think it entitled to." 5 Am. and Eng. Ency. Law (2 Ed.), 867; Whart. Cr. Ev., secs. 66, 67; People v. Shepardson, 49 Cal. 629; People v. Doggett, 62 Cal. 27; Fields v. State, 11 Am. Rep. 771; Springfield v. State, 96 Ala. 81, 11 South. 250, 38 Am. St. Rep. 85; Com. v. Cleary, 135 Pa. 64, 19 Atl. 1017, 8 L. R. A. 301.

The court was also unfortunate in its further charge respecting the good character of the accused, as follows: "If the jury believe from the evidence, beyond a reasonable doubt, that the defendant committed the crime in question, as charged in the information, it will be your sworn

duty, as jurors, to find the defendant guilty, even though the evidence may satisfy your minds that the defendant, previous to the commission of the alleged crime, had sustained a good reputation and character for honesty and truth." Considering this with the previous instructions, limiting the effect of the proof relating to good character, it was calculated to lead the jury to infer that if, from the criminating evidence, they believed the prisoner guilty, they must discard the evidence of good character. The instruction must therefore be regarded as misleading and erroneous, for the accused had the right to have such testimony considered in determining the question of his guilt or innocence, the same as any other evidence in the case. So the accused had the right to have the jury charged that in determining whether or not he was guilty as charged in the information, beyond a reasonable doubt, his good character, so far as involved, if proven, should be considered and weighed the same as any other fact established, and that it in itself might not only create a reasonable doubt of guilt, which might not otherwise exist, but might carry conviction of innocence.

We conclude, therefore, that the court erred in its charge as to good character, and that, at least, the substance of one or the other of the requests hereinbefore quoted and referred to should have been given. While we do not deem further discussion in reference to the charge, which is exceedingly lengthy, necessary, still we think it advisable to direct attention to the fact that there are other portions than those herein discussed which ought to receive close scrutiny by the court before again submitting the case to the jury, in the event of another trial.

We do not think it important to comment on the other points presented in the record.

The case must be reversed and remanded, with directions to the court below to set aside the judgment and sentence, and to grant a new trial. It is so ordered.

MINER, C. J., and BASKIN, J., concur.