The State v. Newton.

THE STATE OF KANSAS v. EDWARD CLARK NEWTON AND MARK MORRIS NEWTON.

No. 14,640. (87 Pac. 757.)

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Trial for Capital Crime—Information.* Article 5 of the amendments to the constitution of the United States is applicable only to proceedings in the federal courts, and not to proceedings in the courts of the states. There is no repugnancy between that constitutional provision and the statutes of this state providing for the trial of capital and infamous crimes upon presentment by information based upon a preliminary examination. (*The State of Kansas v. Barnett*, 3 Kan. 250, 87 Am. Dec. 471.)

2. CRIMINAL LAW — *Instruction on Lower Degree of Offense Charged.* Where, in a criminal prosecution upon a charge of murder in the first degree, the evidence points so strongly to the guilt of the accused in the highest degree of the crime as practically to exclude any theory of guilt in a lower degree, and where the evidence does not naturally suggest the absence of premeditation and deliberation in the commission thereof as probable, still it is the duty of the trial court to define and instruct in reference to all lower degrees of the crime of which there is any reasonable theory of guilt under the evidence.

3. ———— *Failure to Request Instruction — Error Cured.* In

36—74 KAN.

such a case, however, it is not reversible error for the court to omit to define any lower degree of the crime or to instruct in reference to it unless its attention is challenged thereto by a request for such instruction.

Appeal from Barber district court; PRESTON B. GILLETT, judge. Opinion filed November 10, 1906. Affirmed.

### STATEMENT.

THE appellants were tried jointly in the district court of Barber county, were both convicted of murder in the first degree, and jointly appeal to this court.

The uncontroverted facts are as follow: The appellants are brothers, Edward Clark Newton being at the time of the occurrence about twenty-one years of age and a large man, and Mark Morris Newton being about seventeen years of age and considerably smaller than his brother. About July 28, 1904, these brothers, who were traveling with a team of horses and wagon, camped near a schoolhouse by the roadside, and the deceased, Patrick King, came along the road in the evening, having a team of horses and wagon and one or two loose horses, and camped with the Newtons. Sometime during that night King was killed, his body was placed in one of the wagons, after the hands and feet had been tied, and the Newtons took the two outfits with the loose horses and drove some miles to a river, into which they threw the body. They drove on some miles farther, when they were overtaken by the sheriff and arrested. When arrested they had with them King's horses and wagon, and there was found on the person of Edward Clark Newton about $400. After the arrest the appellants made admissions to the sheriff, which will be referred to, so far as deemed necessary, in the opinion.

*C. C. Coleman,* attorney-general, *F. S. Jackson,* assistant attorney-general, and *Samuel Griffin,* county attorney, for The State.

*G. M. Martin,* and *A. M. Applegett,* for appellants.

The opinion of the court was delivered by

SMITH, J.: The appellants' first contention is that they cannot be held to answer for the crime of murder on presentment by information; that as citizens of the territory conveyed to the United States by the Louisiana-purchase treaty they are entitled to all the rights and immunities of citizens of the United States under the third article of that treaty. It is further claimed that, under article 5 of the amendments to the constitution of the United States, no person can be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment by a grand jury. It is readily conceded that the inhabitants of the ceded territory have all the rights and immunities of citizens of the United States, and are, in fact, citizens of the United States. The constitutional provision, however, is applicable to the federal courts only, and not to the courts of the states, and there is no repugnancy between it and the provisions of our statute providing for presentment by information after a preliminary examination. It is within the sovereign power of the state to prescribe the method of procedure in prosecutions for violations of the laws of the state, and such procedure is not within the powers delegated to the national government. (*Barron v. The Mayor and City Council of Baltimore,* 32 U. S. 243, 8 L. Ed. 672; *The State of Kansas v. Barnett,* 3 Kan. 250, 87 Am. Dec. 471.)

Many trial errors are assigned, but we consider it necessary only to advert to one—the failure of the court to define and instruct as to degrees of the crime charged inferior to murder in the first degree. The circumstances of the case indicate that a foul murder was committed in the perpetration of a robbery or for the purpose of stealing the property and money which belonged to the deceased. In other words, the circumstances, considered alone, naturally indicate murder in

the first degree, and that only. After the arrest the appellants made admissions to the sheriff, and there is no conflict in the evidence as to their statements. Their statements were made, according to the evidence of the sheriff and another witness, in the presence of each other, and neither disputed any assertion of the other.

The sheriff and his deputy testified, in substance, that Mark Morris Newton had admitted that he struck King, the deceased, with a neck-yoke; that when he struck him the first time he did not intend to kill him, but that King was so near dead he thought he would put him out of his misery; that he then struck him several times; and that Morris also showed the sheriff the neck-yoke, which had blood marks upon it. They also testified that the reason Morris gave for striking King the first blow was that while he and King were watering their horses at the well King asked him what church his people belonged to; that he said they did not belong to any church, and then King went to abusing people that did not belong to a church, and that made him (Morris) mad; that he did not say anything, but when he got a chance he got up and struck King on the head with a neck-yoke; and that Morris said his brother, Clark, did not know anything about it till the first blow was struck.

The admission of Edward Clark Newton, according to the evidence of the same witnesses, was, in substance, that he knew nothing about any trouble between his brother and King until Morris struck the first blow; that then he jumped up and said, "Morris, what have you done?" and then ran around behind the schoolhouse, near which the killing was done; that Morris came around the schoolhouse and made him go and help him; that Morris threatened Clark that if the latter did not help him he (Morris) would serve him as he had King; that he went with Morris, and Morris took King's money from the body and made him (Clark) take it to keep for him; that they tied the

feet and hands, put the body into one of the wagons, hitched teams to both wagons, and taking all the horses and mules left the place; that he· (Clark) threw the body over the bridge into the river; and that he did not in any way assist or aid in the killing, and did what he did only for the purpose of helping his brother out of the trouble.

There was much other evidence, to wit, that blood spots were found near the schoolhouse, that the body was found in the river with wounds upon the head to account for the death, that the wagon and wagon-sheet, in which appellants admitted hauling the body, were bloody, and that the wagon, harness and horses belonging to King were in the possession of appellants when they were arrested, and about $400, admitted to have been King's money, was found in Clark's pockets.

As before said, the circumstances almost conclusively indicate that the homicide was committed in the perpetration of a felony, which constitutes murder in the first degree. If the admission of Morris—that he determined to kill King to put him out of his misery—is true, he did the final act with deliberation and premeditation. If the statement of Clark is true, he is not guilty of any degree of murder; he is only an accessory after the fact. The jury evidently did not believe his story. Their verdict shows that they must have believed the appellants conspired to rob King, if not to kill him for that purpose, and that the killing was done in the perpetration of the robbery.

The court saw no evidence of any degree of murder except the first degree, and instructed accordingly; and no instruction was asked on the part of the defense challenging the attention of the court to any other degree of murder of which either of the defendants, if guilty at all, could under the evidence be guilty. Let it be conceded that the jury, in the exercise of their indubitable right, might believe so much or so little of the evidence purporting to relate the statements of the appellants as appears to them credible; that they might

accept so much of the statements as they believe the appellants made as the true history of the occurrence, and reject so much as they believe to be false. Let it also be conceded that, by eliminating portions of the statements and giving the most favorable interpretation of the circumstances to the appellants, a reasonable theory is presented under which one or both of the appellants might be found guilty of a degree of murder inferior to murder in the first degree. If so, it was the duty of the court to define such inferior degrees, to formulate the theory, and to instruct in reference thereto. (*The State v. Clark,* 69 Kan. 576, 77 Pac. 287; *The State v. Kittle,* 70 Kan. 241, 78 Pac. 407.)

Where the evidence naturally suggests the guilt of an accused in a lower degree as probable, the rule as above stated is salutary, not only as a matter of justice to the accused but as giving greater certainty to the conviction of those really guilty but in a lower degree than charged. It is the common experience in practice that juries are prone to acquit entirely where one really guilty of crime is charged with a higher grade of the crime than the evidence justifies. It is a common device of criminal lawyers, in defending, to magnify the enormity of the crime charged in order to enlist sympathy and detract attention from the crime proven. By directing attention to the mountain top they hope the foot-hills may escape observation. So it is the duty of the court, by its instructions, to call the attention of the jury to every degree of the crime embraced in the charge of which the evidence naturally suggests the guilt of the accused as probable; and this without a special request, and even over the objection of counsel. It is also the province of counsel to request an instruction upon any grade of the crime which may be omitted; and, if upon any reasonable theory or construction of the evidence it is a proper matter for the consideration of the jury, it is error for the court to refuse the request.

Does it follow, in cases like the one at bar, where the court has instructed as to the only degree of the crime which the evidence naturally suggests as probable, and the jury have returned a verdict of guilty in that degree, ·which verdict is abundantly supported by the evidence, that, because appellants' counsel can, by discarding evidence which the jury might properly have disregarded and by construing circumstances as the jury were not likely to construe them but as the jury had a right to do, build up a reasonable theory of guilt in a lower degree, the judgment should be set aside as erroneous? Our answer is, "No." Such a rule would devolve upon the trial court the duty of speculating upon every possible theory under the evidence. The better rule is that the court should instruct as to every degree of the crime charged of which the evidence naturally suggests the defendant may probably be guilty, and if, by request for further instruction, the attention of the court is challenged to any other degree of the crime, upon which the jury could be justified in finding the accused guilty upon any reasonable construction of the evidence, the court should further instruct as to such degree.

The judgment of the district court is affirmed.

All the Justices concurring.