[Criminal No. 702. Filed September 23, 1929.]

[280 Pac. 672.]

DIWAN SINGH, Appellant, v. STATE, Respondent.

See Criminal Law, 16 **C. J.**, sec. 62, p. 93, n. 93; sec. 1129, p. 585, n. 78; sec. 2272, p. 921, n. 89; sec. 2274, p. 922, n. 3; sec. 2375, p. 977, n. 45; sec. 2376, p. 977, n. 53; sec. 2382, p. 981, n. 99; sec. 2452, p. 1024, n. 86.

Homicide, 29 **C. J.**, sec. 105, p. 1118, n. 84; 30 **C. J.**, sec. 602, p. 349, n. 11; sec. 650, p. 404, n. 93.

Witnesses, 40 **Cyc.**, p. 2588, n. 55.

Mr. R. E. L. Shepherd and Mr. O. V. Willson, for Appellant.

Mr. K. Berry Peterson, Attorney General, Mr. Riney B. Salmon, Assistant Attorney General, and

Mr. Ernest W. McFarland, County Attorney, for the State.

ROSS, J.—From a conviction of murder in the first degree and a sentence of life imprisonment, Diwan Singh has appealed. All his assignments of error except one are based upon the court's instructions. One is upon the insufficiency of the evidence to support the verdict. He devotes several pages of his brief to pointing out errors contained in the instruction on alibi. Since not only is the correctness of the instruction as a whole but its appropriateness under the evidence involved, we will first state the main facts surrounding the *corpus delicti*.

The homicide occurred between 9:30 and 10 o'clock P. M., October 28th, 1927, on Dr. MacRae's ranch, some five miles west of Coolidge, in a public road and just in front of a tent occupied by the Ramirez family, and about 113 feet east of a house occupied by the Quintero family. There had been moonlight dancing, from early in the evening up to the killing, on the front yard or lawn of the Quintero house. The attendants at the dance were mostly Mexicans, but there were present at least four Americans and some Hindus, among them defendant Singh. Along with the music and dancing was drinking of intoxicating liquor.

Singh was Dr. MacRae's ranch superintendent, and when the dancers or others became loud and boisterous he ordered them out, or, as some of the witnesses stated, drove them out of the dance. That he was present at the dance more or less during the evening is certain. He was there when Ernesto Villagrana was killed, for whose death he was tried and convicted. Eight persons testified that they saw him drive his car up behind another car standing in front of the Ramirez tent and in which Villagrana and two others were seated, saw him stop, get out on the

ground, and with a pistol shoot Villagrana in the head. He admitted in his testimony that he was at the gate in front of the Quintero house when he heard and saw a shot located in the direction of the Villagrana car; that he then got in his car and drove in that direction, and while he was so doing and before he reached the Villagrana car he heard three other shots; that he stopped, and after alighting saw in a crowd one man lying on the ground (Villagrana) and another standing by with a gun in his hand; that he took the gun, the party not resisting, and drove to the MacRae house and delivered it to Mrs. MacRae.

The actual measurements on the ground show that Singh was only about 110 feet from Villagrana when, as he says, he heard and saw a shot, and that he then got into his car and moved in that direction. This is according to his testimony and that of his witnesses. In other words, he certainly was all the time within shooting range of the man who was killed, as testified to by both sides, one side saying he did not do the shooting that killed Villagrana and the other that he did.

In *Azbill* v. *State*, 19 Ariz. 499, 172 Pac. 658, 659, we said:

" 'Alibi,' literally means 'elsewhere,' and therefore, lack of opportunity because not present. If the accused were present or in close proximity or easy access, and the evidence so showed, the inability or impossibility of committing the crime would be refuted. While an alibi is frequently referred to as an independent defense, it is, in fact, evidence offered in rebuttal of the state's case. It is an effort to show defendant did not commit the crime because, at the time, he was in another place so far away, or in a situation preventing his doing the thing charged against him."

Other definitions of the word, found in 1 Words and Phrases, Third Series, 388, 389, are:

"Defendant proves an 'alibi' by proof that he was elsewhere at time of commission of crime, laying ground for necessary inference that he could not have committed the act. *People* v. *Schladweiler,* 315 Ill. 553, 146 N. E. 525, 527."

"The defense of 'alibi' arises when there is evidence that accused was at a point where he could not have been guilty of participating in the offense. *Funk* v. *State,* 84 Tex. Cr. Rep. 402, 208 S. W. 509, 513."

"An 'alibi' is a term used to meet the general issue of not guilty, and applies particularly to a claim that the defendant was elsewhere when the crime was committed. To prove it the defendant tenders proof that the place at which he was at the time of the commission of the alleged crime at least raises a reasonable doubt that he committed the crime, either as principal or as aider and abettor. Presence and 'alibi' are the opposite antipodes of each other. An 'alibi' strictly is not a defense though usually called such in criminal procedure. *State* v. *Norman,* 103 Ohio St. 541, 134 N. E. 474."

Treating defendant's evidence as sufficiently showing that at the time of Villagrana's wounding he was at another place and not present at such wounding, and that an instruction predicated upon such assumption was proper, we will examine the one of which complaint is made. It is:

"The defense interposed by the defendant in this case is what is known in law as an alibi. That is, that the defendant was not at the place—that the defendant was at another place at the time of the commission of the crime. And the Court instructs you—the Court instructs the jury that such defense is as proper and legitimate if proved as any other, and all the evidence bearing upon that point should be carefully considered by the jury, and if in view of all the evidence, the jury have a reasonable doubt as to whether the defendant was present when the crime was committed, they should give the defendant the benefit of the doubt and find him not guilty.

"As regards the defense of an alibi, the jury is instructed that the defendant is not required to prove the defense beyond a reasonable doubt to entitle him to an acquittal. It is sufficient if the evidence upon the point raises a reasonable doubt of his presence at the time and place of the commission of the crime charged.

"You are instructed that while the burden of proof to establish an alibi is on the defendant, yet even though the evidence may fall short of establishing the plea, it may be considered by the jury with the entire evidence in determining whether a reasonable doubt of defendant's guilt is raised. A reasonable doubt of defendant's presence at the time and place of the crime is a reasonable doubt of his guilt."

It is said this instruction is inconsistent, contradictory, incorrect, confusing and misleading. To sustain this charge, the instruction is segregated into several parts and these parts shown to be inaccurate or erroneous. For instance, it is argued that an alibi is not a "defense" and that the instruction is wrong when it so characterizes it; that it is a proper defense whether proved or not, whereas the instruction makes it a proper defense only "if proved"; that it causes the question of conviction or acquittal to depend solely upon all the evidence concerning the alibi and not all the evidence in the case including that concerning the alibi; that it places the burden of proving an alibi on defendant; and finally that the statement to the effect that "the burden of proof to establish an alibi is on defendant," and the statement that, even though the evidence falls short of establishing such defense, it might be considered with the entire evidence to determine whether a reasonable doubt of defendant's guilt is raised, are conflicting and prejudicial statements.

We think authority may be cited, indeed is cited by defendant, sustaining all of the above criticisms; but we think the concepts embodied in them are domi-

nated and controlled by the central thought of the instruction, obtruding itself from the beginning to the end, to the effect that the burden was on the prosecution to establish defendant's guilt beyond a reasonable doubt and that it had not sustained such burden if the evidence on the alibi and all the rest of the evidence taken together left the jury in doubt as to his guilt. Defendant relies upon *Schultz* v. *Territory,* 5 Ariz. 239, 52 Pac. 352, and contends that measured by the rule therein announced the instruction here given is clearly erroneous and harmful. The part of the instruction in the Schultz case held bad by the court reads:

"The burden is upon the defendant to prove this defense (alibi) for himself, by a preponderance of the evidence; that is, by the greater and superior evidence. The defense of alibi, to be entitled to consideration, must be such as to show that, at the very time of the commission of the crime charged, the accused was at another place, so far away or under such circumstances that he could not with any ordinary exertion have reached the place where the crime was committed so as to have participated in the commission thereof."

The court said concerning this instruction:

"While conceding that it is not without authority for its support, we do not think this instruction fairly and correctly states the law applicable to the defense of alibi. The burden of proof never rests upon the accused to show his innocence, or to disprove the facts necessary to establish the crime with which he is charged. The defendant's presence at, and participation in, the *corpus delicti,* are affirmative material facts that the prosecution must show beyond a reasonable doubt to sustain a conviction. For the defendant to say he was not there is not an affirmative proposition; it is a denial of the existence of a material fact in the case. He meets the evidence of the prosecution by denying it. If a consideration of all the evidence in the case leaves a reasonable doubt of his presence, he must be acquitted. We hold that the in-

struction given may have misled the jury to the prejudice of the rights of the defendant. It, in effect, said to the jury that evidence tending to show such alibi is not to be considered in favor of the defendant, unless it outweighs all the evidence in opposition to it. We think it was the duty of the trial judge to have said to the jury that they must consider all the evidence in the case, including that relating to the alibi, and determine from the whole evidence whether it was shown beyond a reasonable doubt that the defendant had committed the crime with which he was charged. The burden of proof was not changed when the defendant undertook to prove an alibi, and if, by reason of the evidence in relation to such alibi, the jury should doubt the defendant's guilt, he would be entitled to an acquittal, although the jury might not be able to say that the alibi had been fully proved.''

While the courts differ as to the effect that should be given to a defendant's effort to show he was not present when the crime with which he is charged was committed but was elsewhere, we think the rule stated in the Schultz case is the one generally followed. We believe it sound and logical, and would not depart from it. We think, however, that the instruction here given and assigned, while poorly and inaccurately stating the law, does in the main follow the rule in the Schultz case and was not calculated to mislead the jury or prejudice defendant's rights. *Barton* v. *Territory,* 10 Ariz. 68, 85 Pac. 730; *Azbill* v. *State,* *supra.*

The propriety of any instruction upon alibi under the facts of the case may well be questioned. Before such an instruction can be asked or given, the evidence should show or tend to show defendant was elsewhere when the crime charged against him was committed. Alibi is a physical circumstance and derives its entire potency as a defense from the fact that it involves the physical impossibility of the guilt of the accused. An alibi which leaves it possible for the accused to be the guilty man is no alibi at all, for,

if he committed the offense the scene of that offense is the place where he was at the time of its commission. *Harris* v. *State,* 120 Ga. 167, 47 S. E. 520. The evidence for the defense is not that defendant was elsewhere and could not have shot deceased but that he could not have shot him from the position described by the witnesses for the state, because he was at no time until after the fatal shot closer to deceased than around 100 feet. This evidence would, of course, tend to rebut the state's case, but not to establish an alibi. The instruction in assuming that the evidence showed, or tended to show, defendant elsewhere, was too favorable to defendant if anything.

Defendant finds fault with the court's instruction on motive because it fails to mention alibi and to direct the jury that a want of motive is "a circumstance in favor of defendant's innocence to be considered by the jury along with all the evidence concerning alibi and with the entire evidence of the case." He cites no authority for his contention, and of course none exists. Motive is not an essential element of crime and becomes important only when the evidence, direct and circumstantial, fails to make out a satisfactory case, and then only as evidence. As is said in 16 C. J. 78, section 43:

"The most laudable motive is no defense where the act committed is a crime in contemplation of law."

It is claimed the court misdirected the jury as to the law in the following character instruction:

"The previous good character of the defendant, if such has been proved, is a proper matter for the consideration of the jury like any other fact proved in the case. If, however, you are satisfied beyond a reasonable doubt from all the facts and circumstances proved in the case, that the defendant is guilty of the crime as charged in the information, then it is your duty to find the defendant guilty, even though you may be satisfied from the evidence that the defendant

sustained a good character and reputation previous to and up to the time of the commission of the crime charged.''

The particular objection to this instruction is that it ''ignores the fact that the law requires the jury to consider the good character of defendant along with the other evidence in the case,'' and directs them to consider it independent of the rest of the evidence, and then only when defendant's guilt is not proved or is doubtful. In other words, good character can be considered, but not if all the rest of the evidence shows defendant guilty. It is as if the court had said:

''I have permitted evidence of defendant's good character but you are to discard it unless you are in doubt as to his guilt, in which event you may consider it.''

In *Apodaca* v. *State,* 21 Ariz. 273, 187 Pac. 581, 583, we quote with approval from Roscoe's Criminal Evidence (1846 ed.), 97, as follows:

''That the good character of the party accused, satisfactorily established by competent witnesses, is an ingredient which ought always to be submitted to the consideration of the jury, together with the other facts and circumstances of the case. The nature of the charge and the evidence by which it is supported will often render such ingredient of little or no avail; but the more correct course seems to be, not in any case to withdraw it from consideration, but to leave the jury to form their conclusion upon the whole of the evidence whether an individual whose character was previously unblemished, has or has not committed the particular crime for which he is called upon to answer.''

We believe this is a correct and fair statement of what the rule should be.

''In every criminal prosecution the accused is entitled to prove his good character, and, when proven, it is itself a fact in the case—a circumstance tending,

in a greater or less degree, to establish his innocence; and the prisoner has a right to have it considered by the jury the same as any other fact in evidence." *State* v. *Van Kuran,* 25 Utah 8, 69 Pac. 60, 61.

8 Ruling Case Law, 227, section 223, says:

"The prevailing view is that where evidence of reputation is admissible, its weight should be left to be determined by the jury in connection with all the other evidence in the case; and it is generally agreed that circumstances may be such that an established reputation for good character, if it is relevant to the issue, will alone create a reasonable doubt in the minds of the jury, although without it the other evidence may be convincing. Such proof must be considered by the jury in connection with all the other testimony and not independently thereof, and the guilt or innocence of the defendant determined from all the testimony."

See, also, *People* v. *Bowman,* 81 Cal. 566, 22 Pac. 917; *Sunderland* v. *United States,* (C. C. A.) 19 Fed. (2d) 202, 214, 215.

A number of defendant's neighbors testified that his reputation for peace and quietude was good. This fact the instruction graciously allowed the jury to consider if in doubt of his guilt. In some cases such an instruction would doubtless be regarded as harmless, but here the evidence was sharply in conflict as to whether defendant was the person who shot the deceased. We think good character should not be withdrawn from the jury in any case. The jury should be left "to form their own conclusion upon the whole of the evidence whether an individual whose character was previously unblemished (in the trait involved) has or has not committed the particular crime for which he is called upon to answer," and a failure to do so, in a case where the facts as to who committed the crime, or the circumstances under which it was committed, are in sharp conflict, is prejudicial error.

The instruction on false swearing is the stock form . and reads as follows:

"If you believe that any witness in this case has willfully testified falsely to any material fact in the case, you have the right to disregard the entire evidence of that witness, except in so far as it may have been corroborated by other credible evidence in the case."

It is claimed the element of intent must be both wilful and corrupt to authorize the rejection of the witness' testimony. To support this contention is cited *Babb* v. *State,* 18 Ariz. 505, Ann. Cas. 1918B 925, 163 Pac. 259, 260, where we said: "The first instruction is subject to further criticism, in that it omits the element of knowledge of willfulness," and quoted from Blashfield's Instructions to Juries, section 383, a statement that "the omission of the qualifying words 'wilfully and corruptly' is error." The text, and not the quotation, correctly states the rule. *Schultz* v. *Territory, supra.*

At the close of the instructions the court gave to the jury three forms of verdict: One for murder in the first degree, penalty death; one for murder in the first degree, penalty life imprisonment; and one of not guilty, and said:

"Gentlemen, those are the only three kinds of verdict it is possible for you gentlemen to arrive at under the law and the evidence in this case."

The jury's verdict was for murder of the first degree and punishment fixed at life imprisonment. The criticism of this action of the court is that it excludes from the jury's consideration second degree murder. The imperative mandate of the statute, to the effect that, "Whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty" (section 1090, Pen. Code 1913), was observed, since the verdict

did find the degree, so it is not the form of the verdict but the court's control over it by instruction or direction of which complaint is made. The duty of the court in the trial of a criminal case is one thing, and the duty of the jury another entirely different thing. It is, we believe, the universal rule for the court to pass on and decide all questions of law that may arise in the course of the trial, and for the jury to determine the questions of fact. The rule of law requires the court to determine the issues of the case and to regulate the introduction of evidence offered to prove or disprove such issues, and to submit to the jury for their determination the issues having support in the evidence, or the court may direct the jury to acquit the defendant if it deems the evidence insufficient to warrant a conviction. Section 1060, Pen. Code 1913.

We do not think the rule which requires the jury, when a crime is divided into degrees, to find the degree of which the defendant is guilty, was ever intended to shift the duty from the court of determining in the first place whether the evidence would warrant a conviction of either degree or of only the first degree. If the former, it would be error to direct the jury, as was done in this case, but if the latter, the direction was legal and proper. To illustrate: Under our statutes burglary is divided into degrees. When it is committed in the night-time it is of the first degree, and when committed in the daytime it is of the second degree. Section 460, Pen. Code 1913. While under section 1090 it is made the duty of the jury to find the degree in their verdict, no one would contend the court should, if the evidence conclusively showed the act took place at 10 o'clock at night, direct the jury notwithstanding that they might return a verdict of the second degree. On the contrary, it would be the duty of the court to instruct the jury if they

find defendant guilty to fix the degree in accordance with the evidence.

The legislature has divided murder into first and second degree. A homicide perpetrated by means of poison or lying in wait, or torture, or committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary or mayhem, or committed by any other kind of wilful, deliberate and premeditated killing, is murder of the first degree, and all other kinds are murder of the second degree. Section 172, Pen. Code 1913. It will be noted that the legislature has taken upon itself the responsibility of making the killing of a human being under certain circumstances or conditions conclusive evidence of murder in the first degree. The facts disclosing such a case, it would not be error for the court to direct the jury to confine their verdict to the first degree and not guilty. Another, and perhaps a more numerous, class of first degree murders is described in the statute as homicide perpetrated "by any other kind of wilful, deliberate and premeditated killing," and in which the legislature has failed to enumerate the particular circumstances or conditions necessary to make the killing first degree murder, leaving it to the court and jury to determine in a regular and an orderly manner from the facts in each case the degree of defendant's guilt. When the facts as disclosed by all the evidence in the case show murder in the first degree or nothing— no mitigation, excuse or justification—we said in *Campbell* v. *Territory*, 14 Ariz. 109, 125 Pac. 717, 721, "The court need not instruct the jury as to other grades of the offense." Bearing upon the same point, we also said: "The instructions of the court should be in accord with some phase of the testimony, and should be so framed as to correctly state the law in the light of the testimony." Only such issues as are made by the evidence are ever properly submitted to the jury. Logically it follows that if the crime

charged is divided into degrees, distinguishable from each other by the manner or circumstances under which it was committed, and all of the evidence conclusively shows the defendant guilty of the highest degree or nothing, it would be proper for the court to refuse to instruct on the second degree. If there was no evidence showing, or tending to show, the second degree, it would not be an issue. This is the general rule. *Bandy* v. *Ohio,* 102 Ohio St. 384, 131 N. E. 499, 21 A. L. R. 594, and note at 603, where many cases are collated.

If, when the crime charged is divided into two or more degrees, the evidence submitted conclusively shows the defendant either guilty of a degree certain or not guilty, we conclude the court may properly limit the jury's consideration in accordance therewith. For instance, if the trial should be for burglary, and all the evidence of its commission was that it was done at night-time, the court should restrict the jury's consideration to first degree burglary; or upon a charge of larceny, if the character or value of the stolen property was such as to make it grand larceny or nothing, the jury should be directed to consider whether defendant was guilty of grand larceny. Likewise, if all the evidence in a charge of murder should conclusively show that the killing was wilful, deliberate and premeditated, the court by proper directions should confine the jury's deliberations to the first degree and not guilty. If, however, in the burglary trial there was a dispute as to whether the act was committed in the night-time or in the day-time, and the evidence was conflicting thereon, or if in the larceny case the evidence left in doubt as to whether the property stolen was of a value of fifty dollars or less, or if in a murder trial the state of the evidence is not conclusive as to the degree, then, and in all such cases, the jury should be left free to determine the degree.

It is the most atrocious murders that are classed as of the first degree and the least atrocious of the second degree, but both degrees are just grades of the same high crime—both consist in "the unlawful killing of a human being with malice aforethought." The difference between them is that murder in the second degree is the unlawful killing with malice aforethought but without deliberation, premeditation and wilfulness; whereas, in the first degree these must coexist and concur in the unlawful act. The distinguishing feature of the two degrees rests in the absence of deliberation, premeditation and wilfulness from the second degree. It seems to us that if there is any evidence whatever in the record showing, or tending to show, a lack of wilfulness or deliberation or premeditation—for these must all concur in first degree murder—the question of the degree should under proper instruction be left to the jury.

A careful reading of the testimony in this case certainly leaves our minds in doubt of the existence of wilfulness, deliberation and premeditation on the part of defendant. Before the killing there had been drinking and disturbances of the moonlight dancing. Defendant, by reason of having the management or superintendence of the MacRae ranch, had exercised his authority and expelled some of the disturbers from the dance. The evidence was not developed as to the extent of these troubles or who of the dancers were concerned.

We think a proper rule for the guidance of the trial court is: If upon the evidence it appears that defendant might be guilty of a degree of homicide inferior to murder in the first degree, it is the duty of the court to define such inferior degree or degrees. As is said in *State* v. *Newton,* 74 Kan. 561, 87 Pac. 757, 758:

"Where the evidence naturally suggests the guilt of an accused in a lower degree as probable, the rule

as above stated is salutary, not only as a matter of justice to the accused, but as giving greater certainty to the conviction of those really guilty, but in a lower degree than charged. It is common experience in practice, where one really guilty of crime is charged with a higher grade of the crime than the evidence justifies, that juries are prone to acquit entirely. It is a common device of criminal lawyers, in defending, to magnify the enormity of the crime charged to enlist sympathy, and to detract attention from the crime proven. By directing attention to the mountain top they hope the foothills may escape observation. So, it is the duty of the court, by its instructions, to call the attention of the jury to every degree of the crime embraced in the charge of which the evidence naturally suggests the guilt of the accused as probable; and this without special request, and even over the objection of counsel. It is also the province of counsel to request instruction upon any grade of the crime which may be omitted, and if, upon any reasonable theory or construction of the evidence, it is a proper matter for the consideration of the jury, it is error for the court to refuse it."

See, also, *State* v. *Hardisty*, 121 Kan. 576, 249 Pac. 617; *State* v. *McPhail*, 39 Wash. 199, 81 Pac. 683.

Because of the errors committed in the course of the trial, we find it necessary to reverse and remand the case, with directions that the defendant be granted a new trial.

LOCKWOOD, C. J., and McALISTER, J., concur.