No. 37,117

A. J. BAILEY, *Petitioner,* v. ROBERT H. HUDSPETH, Warden of
the Kansas State Penitentiary, *Respondent.*

(191 P. 2d 894)

Opinion filed March 25, 1948.

*Wilford Riegle,* of Emporia, argued the cause for the petitioner.

*Harold R. Fatzer,* assistant attorney general, argued the cause, and *Edward
F. Arn,* attorney general, was with him on the briefs for the respondent.

The opinion of the court was delivered by

PARKER, J.: This is an original proceeding in habeas corpus
whereby A. J. Bailey seeks his release from the state penitentiary
where he is serving a life sentence for the crime of murder.

The events and proceedings leading up to the petitioner's convic-
tion and sentence are not in dispute but they should be briefly stated
before reference is made to his petition and the ground on which he
relies as the basis for his release from the institution in which he is
now confined.

On May 4, 1931, after he had been accorded a preliminary exami-
nation before a magistrate, as required by G. S. 1935, 62-805, an
information was filed in the district court of Osage county charging
the petitioner with having murdered one Rosa Belle Bailey. There-
after in such district court petitioner, who was present in person and
represented by his attorney, R. G. Hepworth, was duly arraigned
and entered a plea of guilty to the crime charged in the information.
Subsequently, he was adjudged guilty upon such plea of the crime
of murder in the first degree as charged in the information and sen-
tenced to life imprisonment.

The allegations of the petition need not be detailed. Summarized

they charge that petitioner was denied the right to be indicted by a grand jury before being brought to trial for the commission of an infamous crime as required by the fifth and fourteenth amendments to the constitution of the United States and that having been charged with such crime in the state court by information instead of indictment in violation of such constitutional amendments it follows that his conviction, his sentence, and his confinement are illegal and void.

On the same date his petition was filed in this court petitioner by motion requested the appointment of counsel to assist him in the preparation and presentation of his case. His request was granted, and Mr. Wilford Riegle, a reputable and capable member of the bar of this state, was appointed as his legal representative. Since his appointment Mr. Riegle has zealously guarded the petitioner's rights at every stage of the proceedings, his services including personal conferences, extended research, submission of an excellent brief and oral argument of the cause when it was presented to this court at its last session.

Before giving consideration to the question raised by the petition it should also be stated that Kansas is one of the many states of the union having a code of criminal procedure which provides that offenses against the laws of the state may be prosecuted in the court having jurisdiction, either by indictment or information (G. S. 1935, 62-801). Likewise added that such code, for the protection of persons accused of crime, requires (G. S. 1935, 62-805) that no information shall be filed against any person for any felony until he shall have had a preliminary examination before a magistrate, who is charged (G. S. 1935, 62-618) with the duty of discharging the person brought before him if it shall appear from the whole examination that no offense has been committed or that there is not probable cause for charging the prisoner with an offense. At such examination, which is publicly conducted, the accused has the right to be represented by counsel, to meet the witnesses face to face, to cross-examine such witnesses, to call witnesses in his own behalf, and to argue the merits of the cause. He is also entitled to have a transcript of all evidence introduced upon which the magistrate finds that a crime has been committed and that there are probable grounds for believing him guilty of its commission. It should also be noted that, unlike many of our cases, we are not here called upon to determine whether alleged violations

of our state constitution or statutes require the issuance of a writ, it being conceded, under the allegations of the petition, that the petitioner's present confinement in the state penitentiary results from a judgment rendered by a Kansas court of competent jurisdiction pursuant to, and in compliance with, the laws of the state pertaining to the apprehension, arrest, trial, conviction and sentence of persons charged with the commission of crime.

In the interest of certainty and to avoid possible misunderstanding in the future we deem it advisable to quote verbatim the question which petitioner states is raised by his petition. It reads:

"The fifth amendment to the constitution of the United States provides, among other things:

" 'No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of War or public danger.'

"It is the contention of the Petitioner that this part of the Fifth Amendment is one of the privileges or immunities guaranteed to a citizen of both the United States and the State of Kansas, accused of a capital or otherwise infamous crime, whether it be in a Federal Court or in the appropriate court of this State; and that a citizen of the United States, or of this State, as the case may be, is entitled to this privilege and protection because the Fourteenth Amendment to the Constitution made the Fifth, as well as the other first Eight Amendments to the Constitution, applicable to, and binding on, the various States of the Union."

Technically the scope of the foregoing contention does not include the claim that prosecution by information rather than by indictment resulted in depriving petitioner of his liberty without due process of law in violation of the fourteenth and fifth amendments. However, because such claim was so made in oral argument, we shall, in our disposition of the cause, regard it as one of the issues involved.

Turning to our own decisions it should be noted that early in the history of Kansas jurisprudence, long prior to the ratification of the fourteenth amendment, in *State v. Barnett*, 3 Kan. 250, we held:

"Article 5 of the amendments to the constitution of the United States, held not to be applicable to any other than proceedings in the United States court, and that there is no repugnancy between it and the act of legislature of 1864 (p. 111) providing for the trial of offenses upon information filed." (Syl. ¶ 1).

After the ratification of such amendment both of the grounds now relied on for the issuance of a writ were considered by this court and denied.

In *State v. Whisner*, 35 Kan. 271, 10 Pac. 852, where it was contended that prosecution by information was in violation of due process, we said:

"And we can perceive no fundamental rights in that system of jurisprudence, of which ours is derivative, which have in any way been disregarded. The words 'due process of law' do not mean and have not the effect of limiting the powers of the state to prosecutions for crime by indictment, 'but these words do mean law in its regular course of administration, according to the prescribed forms, and in accordance with the general rules for the protection of individual rights.' (*Hurtado v. The People*, 110 U. S. 516; *Walker v. Sowvinet*, 92 id. 90-93.) The law authorizing the filing of information in such a case as this, is not in conflict with our constitution, or the constitution of the United States. (*The State v. Barnett*, 3 Kan. 250; Cooley on Constitutional Limitations, 5th ed., 376; *Kalloch v. Superior Court*, 56 Cal. 229; *Ex parte Wilson*, 114 U. S. 417.)

"A sufficient information was filed against the defendant; with the information was filed the sworn statements of the important witnesses whose names were indorsed thereon. Thereby the defendant was fully apprised of the nature of the charges against him, so that he might know what he was to answer. The proceeding against him was upon inquiry; he was heard before he was condemned, and no judgment was rendered until after trial. Therefore, there is no force whatever in the assertion 'that the proceeding was not by due process of law.'" (p. 277.)

*State v. Newton*, 74 Kan. 561, 87 Pac. 757, was a murder case. There the effect of the appellants' argument was that the provisions of the fifth amendment were imposed upon the states by the privileges and immunities clause of the fourteenth amendment. We held to the contrary and in the opinion said:

"The appellants' first contention is that they cannot be held to answer for the crime of murder on presentment by information; that as citizens of the territory conveyed to the United States by the Louisiana-purchase treaty they are entitled to all the rights and immunities of citizens of the United States under the third article of that treaty. It is further claimed that, under article 5 of the amendments to the constitution of the United States, no person can be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment by a grand jury. It is readily conceded that the inhabitants of the ceded territory have all the rights and immunities of citizens of the United States, and are, in fact, citizens of the United States. The constitutional provision, however, is applicable to the federal courts only, and not to the courts of the states, and there is no repugnancy between it and the provisions of our statute providing for presentment by information after a preliminary examination. It is within the sovereign power of the state to prescribe the method of procedure in prosecutions for violations of the laws of the state, and such procedure is not within the powers delegated to the national government. (*Barron v. The Mayor and City Council of Baltimore*, 32 U. S.

243, 8 L. Ed. 672; *The State of Kansas v. Barnett,* 3 Kan. 250, 87 Am. Dec. 471.)"   (p. 563.)

More recent decisions recognizing and approving the doctrine announced in the cases just cited are *State, ex rel., v. Kansas City,* 125 Kan. 88, 90, 262 Pac. 1032, and *Sester v. Belvue Drainage District,* 162 Kan. 1, 6, 173 P. 2d 619.

Thus it appears that if the writ is to be allowed we are required to strike down as invalid the long-established methods of procedure prescribed by legislative fiat for the prosecution of crime in this state and hold, not only that there must be substituted in lieu thereof the grand jury system, early in our history recognized as cumbersome, antiquated, and impingent of rights guaranteed by our own state constitution, but also that convictions had thereunder, without regard to consequences to society, are wholly void.   This court is satisfied with the criminal prosecutorial system in force and effect in this state and approves of its earlier decisions, heretofore cited, upholding its validity.   When, then, is it required to take action invalidating such system and abrogating its decisions?   We conceive it is our duty to do so only when the supreme court of the United States expressly declares that state legislation, and state supreme court decisions upholding it, are in conflict with the federal constitution.   That this is true is so well established as to hardly require citation of authorities.

In 14 Am. Jur. 336, § 117, the rule, supported by citation of decisions from all courts of the land, is stated thus:

"The Constitution of the United States, the laws of Congress made in pursuance thereof, and treaties made under the authority of the United States are by the Constitution of the United States made the 'supreme law of the land' and are binding upon all the courts of all the states, anything to the contrary in the Constitution or laws of a state notwithstanding. It follows necessarily from this constitutional provision that where a suit in the state court involves a question arising under the Constitution, . . . a decision of the United States Supreme Court upon the point at issue is to be regarded as absolutely binding and authoritative; and in such case, if the supreme court of a state should entertain a different view, it will follow the Federal Supreme Court, reversing and overruling, if necessary, its own previous decisions to the contrary."

To the same effect is 16 C. J. S. 204, § 93.

A more concise statement of the same principle is to be found in 21 C. J. S. 365, § 206.   It reads:

"Where a question is federal in its nature, the decisions of the supreme court of the United States are absolutely binding on the various state courts

and must be followed, regardless of the views of the latter courts, and even though such decisions are inconsistent with prior decisions of the state courts. So the decisions of the federal court are binding as to the construction of the federal constitution. . . ."

See, also, 11 Am. Jur. 740, § 104.

Has the supreme court of the United States ever held that prosecution by information results in the deprivation of rights guaranteed to a citizen under either the fifth or the fourteenth amendments to the federal constitution? Resort to its decisions convinces us that it not only has not done so but that it has always upheld the validity of state statutes authorizing criminal proceedings by information.

The following decisions hold that criminal prosecutions in state courts may be by information instead of indictment and that laws authorizing such procedure do not violate the "due process of law" clause in either the fourteenth or fifth amendments. (*Hurtado v. People of California*, 110 U. S. 516, 28 L. Ed. 232, 4 S. Ct. 111; *Ex parte Converse*, 137 U. S. 624, 34 L. Ed. 796, 11 S. Ct. 191; *Hallinger v. Davis*, 146 U. S. 314, 36 L. Ed. 986, 13 S. Ct. 105; *McNulty v. California*, 149 U. S. 645, 37 L. Ed. 882, 13 S. Ct. 959; *Hodgson v. Vermont*, 168 U. S. 262, 42 L. Ed. 461, 18 S. Ct. 80; *Bolln v. Nebraska*, 176 U. S. 83, 44 L. Ed. 382, 20 S. Ct. 287; *Maxwell v. Dow*, 176 U. S. 581, 44 L. Ed. 597, 20 S. Ct. 448; *Lem Woon v. Oregon*, 229 U. S. 586, 57 L. Ed. 1340, 33 S. Ct. 783; *Gaines v. Washington*, 277 U. S. 81, 72 L. Ed. 793, 48 S. Ct. 468; *Snyder v. Massachusetts*, 291 U. S. 97, 78 L. Ed. 674, 54 S. Ct. 330.)

To the same effect, except that they involve criminal prosecutions instituted in Indian territories and other territorial possessions of the United States, are *Talton v. Mayes*, 163 U. S. 376, 41 L. Ed. 196, 16 S. Ct. 986; *Hawaii v. Mankichi*, 190 U. S. 197, 47 L. Ed. 1016, 23 S. Ct. 787; *Dowdell v. United States*, 221 U. S. 325, 55 L. Ed. 753, 31 S. Ct. 590; *Ocampo v. United States*, 234 U. S. 91, 58 L. Ed. 1231, 34 S. Ct. 712.

Other cases recognizing and approving the doctrine announced in the foregoing decisions are *Jordan v. Massachusetts*, 225 U. S. 167, 56 L. Ed. 1038, 32 S. Ct. 651; *Brown v. Mississippi*, 297 U. S. 278, 80 L. Ed. 682, 56 S. Ct. 461; *Palko v. Connecticut*, 302 U. S. 319, 82 L. Ed. 288, 58 S. Ct. 149; *West v. Louisiana*, 194 U. S. 258, 48 L. Ed. 965, 24 S. Ct. 650; *Caldwell v. Texas*, 137 U. S. 692, 34 L. Ed. 816, 11 S. Ct. 224.

*Maxwell v. Dow,* 176 U. S. 581, 44 L. Ed. 597, 20 S. Ct. 448, and *Ex parte Converse,* 137 U. S. 624, 34 L. Ed. 796, 11 S. Ct. 191, expressly hold that the clause "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury" is not imposed upon the states as one of the privileges and immunities guaranteed a citizen of the United States under the provisions of the fourteenth amendment.

Our citation of authorities has been purposely limited to the precise question involved in the case at bar. However, because of the similarity of legal propositions involved, it should perhaps be pointed out that the clause of the fifth amendment protecting one accused of crime from being compelled to be a witness against himself is not made effective by the fourteenth amendment as a protection against state action on the ground it is a personal privilege or immunity secured by the federal constitution. (*Adamson v. California,* 332 U. S. 46, 91 L. Ed. 1903, 67 S. Ct. 1672, 171 A. L. R. 1223; *Twining v. New Jersey,* 211 U. S. 78, 53 L. Ed. 97, 29 S. Ct. 14; *Palko v. Connecticut,* 302 U. S. 319, 82 L. Ed. 288, 58 S. Ct. 149; *Snyder v. Massachusetts,* 291 U. S. 97, 78 L. Ed. 674, 54 S. Ct. 330.) The same is true of the clause "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." (*Palko v. Connecticut,* supra.).

Heretofore we have not mentioned specifically the arguments advanced by petitioner in support of his petition. Even so, we have not failed to give them consideration.

He first urges that the history and purpose of the fourteenth amendment proves conclusively that it was intended to make everything in the first eight amendments binding upon the states and then insists the fourteenth has never been interpreted in the light of its early history. We do not agree. However, we need not labor the reasons for our conclusion. The short answer to such contention is that this idea was early rejected by judges who were themselves witnesses of the process by which the fourteenth amendment became part of the constitution and no court of last resort has ever yet become convinced their conclusions were erroneous.

Much weight is placed upon dissenting opinions to be found in the decisions handed down throughout the course of years. Obviously they do not require or permit the issuance of a writ. It is the opinion of the court, not the dissenting opinions of its individual members, that makes the law of the land.

Next it is suggested that during the past twenty-two years the first eight amendments, or parts of them, have been made applicable to the states by decisions of the supreme court of the United States and argued that its more recent decisions indicate that as soon as provisions not recently considered are presented for review such provisions, and eventually the amendments in their entirety, will be held to be so applicable. For us to speculate upon this suggestion would be presumptuous. However, we can with propriety point out that as recently as *Adamson v. California,* supra, the court to which petitioner refers said and held:

"As a matter of words, this leaves a state free to abridge, within the limits of the due process clause, the privileges and immunities flowing from state citizenship. This reading of the Federal Constitution has heretofore found favor with the majority of this Court as a natural and logical interpretation. It accords with the constitutional doctrine of federalism by leaving to the states the responsibility of dealing with the privileges and immunities of their citizens except those inherent in national citizenship. It is the construction placed upon the amendment by justices whose own experience had given them contemporaneous knowledge of the purposes that led to the adoption of the Fourteenth Amendment. This construction has become embedded in our federal system as a functioning element in preserving the balance between national and state power. We reaffirm the conclusion of the Twining and Palko Cases that protection against self-incrimination is not a privilege or immunity of national citizenship.

"The due process clause of the Fourteenth Amendment, however, does not draw all the rights of the federal Bill of Rights under its protection. That contention was made and rejected in *Palko v. Connecticut,* 302 U. S. 319, 323, 82 L. Ed. 288, 290, 58 S. Ct. 149. It was rejected with citation of the cases excluding several of the rights, protected by the Bill of Rights, against infringement by the National Government. Nothing has been called to our attention that either the framers of the Fourteenth Amendment or the states that adopted intended its due process clause to draw within its scope the earlier amendments to the Constitution. Palko held that such provisions of the Bill of Rights as were 'implicit in the concept of ordered liberty,' p. 325, became secure from state interference by the clause. But it held nothing more." (p. 1469.)

We may likewise add we have observed nothing in any of such decisions to cause us to anticipate or fear, that so long as the states maintain criminal procedural systems affording far more liberal rights than those accorded under the grand jury system, the requirement of the fifth amendment with respect to indictments by a grand jury, which indictments, all must concede, are procured in secret proceedings without privilege on the part of an accused to face or cross-examine witnesses or have the benefit of counsel,

will ever be regarded as essential to the fundamental concepts of ordered liberty or to a fair and enlightened system of justice.

Finally, frankly conceding the supreme court of the United States has never held prosecution by information to be in violation of the federal constitution, petitioner relies upon *People of the State of Michigan v. Peter Simon,* decided October 1, 1947, by the circuit court of Wayne county, Mich., as authority for issuance of a writ. We have analyzed that decision and regard both its reasoning and its result as unsound and erroneous.

The over-all answer to the contentions advanced by petitioner is that the supreme court of the United States in construing both the fourteenth and fifth amendments has held, in decisions never disapproved, that criminal prosecutions in the state court may be by information instead of indictment. That as we have heretofore indicated, not only permits but requires this court to deny the writ.

It is so ordered.